STATE OF NORTH CAROLINA v. PERRY WAYNE LOWERY

No. 230A83

(Filed 6 December 1983)

1. **Homicide §§ 8.1, 21.5— first degree murder—sufficiency of evidence—intoxication—premeditation and deliberation**

   In a prosecution for first degree murder, substantial evidence was presented which tended to show that defendant killed his victim after forming a deliberate and premeditated intent to kill, and although portions of defendant's evidence tended to show that he was intoxicated and doing strange things at a nightclub, this evidence did not warrant a finding, as a matter of law, that defendant was incapable of forming the specific intent to kill.

2. **Homicide § 7.1— first degree murder—defense of unconsciousness—insufficient evidence to require dismissal of charge**

   In a prosecution for first degree murder, although there was some evidence that defendant may have been unconscious as the result of an alcoholic blackout at the time he shot his victim, the evidence was insufficient to require the jury to so find.

APPEAL by defendant from a judgment of the Superior Court entered following his conviction of murder in the first degree.

Before the *Honorable Anthony M. Brannon, Judge Presiding,* and a jury, at the 14 November 1982 Session of Superior Court, HOKE County, defendant was found guilty of murder in the first degree. The defendant was sentenced to life imprisonment. Pursuant to G.S. § 7A-27(a) (1981), defendant appeals his conviction and sentence as a matter of right.

*Rufus L. Edmisten, Attorney General, by Ralf F. Haskell, Assistant Attorney General, for the State.*

*John Wishart Campbell, for the defendant-appellant.*

FRYE, Justice.

The sole issue presented for this Court's review is whether the trial court erred in denying defendant's motion to dismiss the charge of first degree murder at the close of all the evidence. The defendant seeks a new trial because of the trial court's alleged error in submitting first degree murder as a possible verdict to the jury. For the reasons stated in this opinion, we hold that the trial court did not err in denying defendant's motion to dismiss the

first degree murder charge. Therefore, we find no error in the proceedings leading to defendant's conviction of murder in the first degree and sentence of life imprisonment.

The State's evidence at trial tended to show that on the night of 8 May 1982 and during the early morning hours of 9 May 1982, defendant and some of his friends were at Bradie's Place, a local nightclub in Hoke County. Bradie's Place is a large club which consists of an old and a new section. The combined sections can accommodate at least four hundred people. The rules and regulations of Bradie's Place prohibit all patrons from bringing any weapons into the club. In order to enforce this rule, all men are physically patted down and then searched with a metal detector prior to being admitted to the club. Although women are not searched prior to entering the club, they are prohibited from bringing pocketbooks into the club.

Between 12:15 and 12:30 a.m. on 9 May 1982, the victim, Terry Locklear, walked between the defendant and another patron of the club who was standing approximately six to seven feet away from the defendant. Locklear was walking in the general direction of the front door of Bradie's Place. The defendant hollered, "Hey Terry," after Locklear had passed him. As Locklear turned around, the defendant removed his hand from behind his back, pointed a .32 caliber semi-automatic pistol at the victim and then shot him. As a result of the gunshot wound, Locklear died within minutes. The defendant had an odor of alcohol about his person when the crime was committed, but all indications were that he was not highly intoxicated. There was also evidence that approximately two years prior to the occurrence of this incident, Locklear had cut the defendant during the course of a fight between them.

The defendant's evidence at trial tended to show that he spent the major portion of 8 May 1982 with his good friend and brother-in-law, Lacy Lowery. The defendant started drinking at approximately 10:30 a.m. and drank continuously throughout the day and night. During this time period, defendant drank a case of twelve-ounce beers and one-half of a fifth of rum. He also smoked alone or shared with others between 10 and 15 marijuana cigarettes, and he took one pill of a mind altering drug.

Dr. Riley Jordan, M.D., testified concerning the effects of alcohol and drugs on the body. He stated that alcohol and drugs could cause an individual to have an alcoholic blackout. In Dr. Jordan's opinion, a five foot ten inch, one hundred and eighty pound man, who in a period of twelve hours drank as much alcohol and smoked as much marijuana as the defendant had, "could likely be subject to suffering an alcoholic blackout." Dr. Jordan had not personally examined the defendant.

Other evidence adduced by the defendant tended to show that he was highly intoxicated on the day and night in question. Witnesses testified that he exhibited uncharacteristic behavior at Bradie's Place by dancing with a man and grabbing a woman's derriere. Defendant testified that he did not remember going to Bradie's Place or what happened while he was there.

At the conclusion of all the evidence, the defendant's motion to dismiss the charge of first degree murder was denied by the trial court. The jury was given three possible verdicts: (1) Guilty of murder in the first degree, (2) Guilty of murder in the second degree; or, (3) Not guilty. The jury returned a verdict of guilty of murder in the first degree.

## A.

[1] Defendant contends that he was so intoxicated when he fatally shot Terry Locklear that he was incapable of forming a deliberate and premeditated intent to kill, and therefore, the trial court erred in failing to reduce the charge from first degree murder to second degree murder and in denying his motion for dismissal of the first degree murder charge. As an alternative reason for not submitting the first degree murder charge to the jury, the defendant contends that he was unconscious as a result of suffering an alcoholic blackout when he shot the victim.

A motion for dismissal pursuant to G.S. § 15A-1227 tests the sufficiency of all the evidence to carry the case to the jury and is the same as a motion for judgment as in the case of nonsuit under G.S. § 15-173. *State v. Jenkins*, 300 N.C. 578, 590, 268 S.E. 2d 458, 466 (1980). Therefore, cases pertaining to the sufficiency of the evidence under G.S. § 15-173 are also applicable to motions made pursuant to G.S. § 15A-1227. *State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980).

The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. *Powell,* 299 N.C. at 98, 261 S.E. 2d at 117; *See State v. Roseman,* 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971). In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Bright,* 301 N.C. 243, 257, 271 S.E. 2d 368, 377 (1980). Contradictions and discrepancies in the evidence are strictly for the jury to decide. *State v. Bolin,* 281 N.C. 415, 424, 189 S.E. 2d 235, 241 (1972).

The trial court in considering a motion to dismiss is concerned only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence. *State v. McNeil,* 280 N.C. 159, 162, 185 S.E. 2d 156, 157 (1971). The test of whether the evidence is sufficient to withstand a motion to dismiss is whether a reasonable inference of defendant's guilt may be drawn from the evidence, and the test is the same whether the evidence is circumstantial or direct. *Bright,* 301 N.C. at 257, 271 S.E. 2d at 377. If the trial court determines that a reasonable inference of defendant's guilt can be drawn from the evidence, then the defendant's motion to dismiss should be denied and the case should be submitted to the jury. *State v. Smith,* 40 N.C. App. 72, 79, 252 S.E. 2d 535, 540 (1979); *See State v. Rowland,* 263 N.C. 353, 358, 139 S.E. 2d 661, 665 (1965).

In the instant case, in order to convict defendant of first degree murder, the State had to produce evidence sufficient to satisfy the jury beyond a reasonable doubt that defendant unlawfully killed Terry Locklear with malice and in the execution of an actual specific intent to kill, formed after premeditation and deliberation. *State v. Hamby,* 276 N.C. 674, 678, 174 S.E. 2d 385, 387 (1970), *death sentence vacated,* 408 U.S. 937, 33 L.Ed. 2d 754, 92 S.Ct. 2862, *conformed to,* 281 N.C. 743, 191 S.E. 2d 66 (1972). If at the time of the killing, the defendant was so intoxicated as to be utterly incapable of forming a deliberate and premeditated intent to kill, he could not be found guilty of first degree murder,

State v. Lowery

because an essential element of the crime would be missing. *See State v. Propst,* 274 N.C. 62, 71-72, 161 S.E. 2d 560, 567 (1968). However, "no inference of the absence of deliberation and premeditation arises from intoxication as a matter of law," *State v. Murphy,* 157 N.C. 614, 619, 72 S.E. 1075, 1077 (1911), because intoxication does not necessarily render a person incapable of engaging in the thought process of premeditation and deliberation.

In deciding whether the trial court erred in denying defendant's motion to dismiss the first degree murder charge, this Court must decide whether there is substantial evidence of each essential element of the offense charged, in this case, first degree murder.[1] *Powell,* 299 N.C. at 98, 261 S.E. 2d at 117 (1980). Stated more specifically, the question before this Court is whether the evidence, when considered in the light most favorable to the State, tends to show that defendant was so intoxicated when he fatally shot Locklear that he was utterly incapable of forming a deliberate and premeditated intent to kill. If any evidence reasonably tended to show that defendant formed the specific intent to kill Locklear and that this intention to kill was preceded by premeditation and deliberation, then the denial of defendant's motion was proper. *State v. Simmons,* 240 N.C. 780, 785, 83 S.E. 2d 904, 908 (1954). The general rule is that the jury determines whether the mental condition of the accused was so far affected by intoxication that he was unable to form a guilty intent to kill, unless the evidence is not sufficient to warrant the submission of the question to the jury. *Hamby,* 276 N.C. at 679, 174 S.E. 2d at 388 (1970), *death sentence vacated,* 408 U.S. 937, 33 L.Ed. 2d 754, 92 S.Ct. 2862, *conformed to,* 281 N.C. 743, 191 S.E. 2d 66 (1972).

Applying the foregoing principles to this case, we find that substantial evidence of each essential element of murder in the first degree was presented at trial, and that the evidence did not show that defendant was utterly incapable of forming a deliberate and premeditated intent to kill. The State's evidence showed that the defendant, without any apparent provocation, fatally shot Locklear with a .32 caliber pistol, a deadly weapon. Malice and

---

1. Since there is no question in this case about the defendant being the perpetrator of the crime, that question which is also raised by the motion to dismiss will not be addressed.

unlawfulness may be presumed from the intentional killing of another with a deadly weapon. *State v. Jackson,* 284 N.C. 383, 388, 200 S.E. 2d 596, 599 (1973).

Premeditation and deliberation, essential elements of murder in the first degree, have been defined as follows by this Court. Premeditation means thought beforehand for some length of time, however short. *State v. Buchanan,* 287 N.C. 408, 417, 215 S.E. 2d 80, 85 (1975). Deliberation means an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose, and not under the influence of a violent passion suddenly aroused by some lawful or just cause or legal provocation. *State v. Reams,* 277 N.C. 391, 401-02, 178 S.E. 2d 65, 71 (1970), *cert. denied,* 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133 (1971), *quoting, State v. Benson,* 183 N.C. 795, 798, 111 S.E. 869, 871 (1922). Since a specific intent to kill is a necessary constituent of the elements of premeditation and deliberation, proof of premeditation and deliberation is also proof of intent to kill. *State v. Jones,* 303 N.C. 500, 505, 279 S.E. 2d 835, 838-39 (1981).

In the instant case, substantial evidence was presented which tended to show that defendant killed Locklear after forming a deliberate and premeditated intent to kill. The defendant picked up his loaded pistol from his mother's house approximately two hours before the shooting occurred. Despite the security system employed at Bradie's Place, which included a pat down and the searching of all males with a metal detector, defendant was able to smuggle his gun into the club. No evidence was presented at trial that Locklear said anything to the defendant or provoked him in any manner prior to the shooting incident. The defendant yelled, "Hey Terry," as Locklear was walking toward the front door of the club. As Locklear turned around, the defendant pulled a gun from behind his back, aimed it at Locklear and fatally shot him. As testified to by the defendant at trial, his gun would not fire unless the hammer was pulled back prior to the actual pulling of the trigger. After being advised of his rights by Detective Hart of the Hoke County Sheriff's Department, defendant asked if the boy was dead, which tends to show that he was aware of his prior actions.

The defendant's evidence, taken in the light most favorable to the State, tended to show that defendant was capable of form-

ing the specific intent to kill. During the afternoon hours he played basketball with some of his friends and was able to "handle the basketball," "throw it at the hoop," and "catch the rebounds." While the defendant and some of his friends were riding around town drinking, they took one of their companions home for being drunk and rowdy and for misbehaving. Before going out later in the evening, the defendant was concerned enough about his personal appearance to either go to his house or to his sister's house to shower and change clothes. Approximately two hours before the shooting, defendant stopped by his mother's house to pick up his .32 caliber pistol. After arriving at Bradie's Place, the defendant was able to maneuver about the club, including the old and new sections, without requiring the assistance of anyone. Viewing this evidence in the light most favorable to the State, it constitutes "substantial evidence" (i.e., a reasonable inference) that defendant was capable of forming a deliberate and premeditated intent to kill.

Therefore, although other portions of defendant's evidence tended to show that he was intoxicated and doing strange things at the club (i.e., he grabbed a woman's derriere and he was seen dancing with a man), this evidence did not warrant a finding, as a matter of law, that defendant was incapable of forming the specific intent to kill.

After reviewing the foregoing evidence, we find that substantial evidence was presented at trial which tended to show that defendant unlawfully killed Terry Locklear with malice and in the execution of an actual specific intent to kill, formed after premeditation and deliberation. Additionally, the defendant's evidence of his apparent state of intoxication did not, as a matter of law, prove that he was incapable of forming a deliberate and premeditated intent to kill. The mere fact that defendant had been drinking, without evidence that he was intoxicated to a degree precluding premeditation and deliberation, does not present a defense to a charge of first degree murder. *State v. Cureton*, 218 N.C. 491, 494, 11 S.E. 2d 469, 470-71 (1940). Therefore, the trial court did not err in denying defendant's motion to dismiss the charge of first degree murder.

B.

[2] Defendant's alternate claim that the charge of first degree murder should have been dismissed because of his being uncon-

scious as a result of an alcoholic blackout is without merit. Defendant testified that he did not remember going to Bradie's Place or what happened while he was there. He also offered the testimony of Dr. Riley Jordan who stated that the ingestion of alcohol and drugs could cause someone to suffer an alcoholic blackout, which causes them to lose recall for a certain period of time. Even though recall is lost, the individual suffering from an alcoholic blackout apparently knows what he is doing while he is engaging in the forgotten act, according to Dr. Jordan's testimony. He also stated that an alcoholic blackout would not likely occur from one day of drinking. Dr. Jordan's comments were based on his general knowledge of alcoholic blackouts. He was not able to specifically relate any of his comments to the defendant because he had not physically examined the defendant, and he knew nothing about the defendant's physical or psychological condition on the day or night in question.

Generally, a person who is unconscious at the time he commits an act which would otherwise be criminal cannot be held responsible for the act. *State v. Mercer*, 275 N.C. 108, 116, 165 S.E. 2d 328, 334 (1969), *rev'd on other grounds*, 287 N.C. 266, 215 S.E. 2d 348 (1975). This is so because one who is completely unconscious when he commits an act, otherwise punishable as a crime, cannot know the nature and quality thereof or whether it is right or wrong. *Id.* at 117, 165 S.E. 2d at 335. Nevertheless, although unconsciousness is always of legal significance, it is not always a complete defense to a crime when it is induced by voluntary intoxication. *Id.* at 119, 165 S.E. 2d at 336; *State v. Williams*, 296 N.C. 693, 700, 252 S.E. 2d 739, 744 (1979).

In the instant case, there was abundant evidence adduced at trial that defendant voluntarily ingested drugs and alcohol prior to fatally shooting Locklear. Assuming, *arguendo*, that the defendant's evidence was sufficient to permit a jury finding that defendant was unconscious when he shot Locklear, it does not point so unerringly to that conclusion as to require such a finding. At most, this evidence contradicts the State's evidence which tended to show that the defendant was conscious when he fatally shot Locklear. As contradictions and discrepancies in the evidence are to be resolved by the jury, the question of defendant's guilt or innocence of murder in the first degree was properly submitted to the jury. *State v. Bolin*, 281 N.C. 415, 424, 189 S.E. 2d 235, 241

(1972). The jury resolved those contradictions and discrepancies against the defendant when it found him guilty of murder in the first degree.

Based upon our careful review of all the evidence presented at trial, we hold that the trial court did not err in denying defendant's motion to dismiss the charge of first degree murder. In the proceedings leading to defendant's conviction of murder in the first degree and sentence of life imprisonment, we find

No error.