STATE OF NORTH CAROLINA v. OSCAR GARCIA GONZALEZ AND RALPH WOODS, JR.

No. 325PA83

(Filed 5 June 1984)

1. **Larceny § 5.3— possession of recently stolen property—inference raised**

The doctrine of possession of recently stolen property raises an inference that the possessor is the thief, and the inference of fact which is derived from possession of recently stolen goods is considered by the jury as an evidentiary fact along with all the other evidence in a case in its attempt to determine whether the State has met its burden of proving defendant's guilt beyond a reasonable doubt.

2. **Robbery § 4.3— armed robbery—doctrine of possession of recently stolen property**

The State's evidence was sufficient for the jury to find defendant guilty of armed robbery under the doctrine of possession of recently stolen property where it tended to show that a service station attendant placed his gun under the counter of the service station at 3:00 p.m. when he began work; during the course of a robbery of the attendant, a masked gunman hid behind the counter where the gun had been placed in order to avoid detection by a customer of

State v. Gonzalez

the service station; the attendant gave the cash register drawer and the cash contained therein to the masked gunman as he hid behind the counter; as the masked gunman left the service station he ran into another masked man wearing a blue leisure jacket, and after exchanging words, both men ran from the service station together; the attendant noticed that his gun was missing immediately after the robbers left the service station; the gun which had been taken from the service station was found on the person of defendant when he was arrested several hours after the robbery; at the time of his arrest, defendant was wearing a light blue leisure jacket matching the description of the one worn by one of the robbers; defendant appeared "terribly nervous" while an officer talked to him prior to his arrest; and defendant falsely told the arresting officer that he worked at a local mill in town and gave the officer a false name for purposes of identification.

3. **Constitutional Law § 72; Criminal Law § 77.3— statement of codefendant as implicating defendant—denial of right of confrontation**

In a prosecution of three persons for the armed robbery of a service station attendant, the extrajudicial statement of a nontestifying codefendant that "I told him I was with some guys, but that I didn't rob anyone, they did," clearly implicated defendant where only two persons were seen in the service station at the time of the robbery, and defendant and a second codefendant were being tried jointly with the nontestifying codefendant. Therefore, admission of the codefendant's statement violated defendant's Sixth Amendment right to confront the witnesses against him and was prejudicial error.

4. **Criminal Law §§ 77.3, 162— statement of nontestifying codefendant—no waiver of objection or invited error**

Defendant's counsel did not waive his right to object to the admissibility of a nontestifying codefendant's extrajudicial statement or invite the erroneous admission of the statement by failing to object before the statement was read to the jury where the trial court ordered the State to sanitize the extrajudicial statements of three defendants before the statements would be deemed admissible; the allegedly sanitized versions of the codefendants' statements were given to defendant's counsel two days later during the course of the trial; it appears that, aside from one 15 minute recess during the trial and prior to the admission of the second codefendant's statement, defendant's counsel did not have a reasonable amount of time to review the extrajudicial statements; and defendant's counsel moved to strike the portion of the nontestifying codefendant's statement which implicated defendant immediately after the codefendant's statement was read into evidence.

Justice MEYER dissenting.

Justices COPELAND and MITCHELL join in the dissenting opinion.

ON discretionary review of the decision of the Court of Appeals, 62 N.C. App. 146, 302 S.E. 2d 463 (1983), affirming defendant Woods' convictions of armed robbery and carrying a concealed weapon. Judgment was entered at the 21 June 1982

State v. Gonzalez

Criminal Session of Superior Court, MONTGOMERY County, by the *Honorable James A. Beaty, Jr., Judge Presiding.* Heard in the Supreme Court 16 February 1984.

*Rufus L. Edmisten, Attorney General, by Floyd M. Lewis, Associate Attorney, for the State.*

*Adam Stein, Appellate Defender, by James R. Glover, Director, Appellate Defender Clinic, for the defendant-appellant, Ralph Woods, Jr.*

FRYE, Justice.

Defendant was charged in indictments, proper in form, with armed robbery, larceny of a firearm and carrying a concealed weapon, violations of G.S. 14-87, G.S. 14-72, and G.S. 14-269 respectively. Upon defendant's plea of not guilty, his case was duly calendared for trial. Defendant's case was consolidated for trial with the cases of codefendants, Oscar Garcia Gonzalez and Ervin Calvin Crawford, who also were charged with the armed robbery of the same store which defendant had been charged with robbing.[1] A jury found defendant guilty of armed robbery and carrying a concealed weapon. Codefendant Gonzalez was convicted as charged. Codefendant Crawford was acquitted.

The trial court sentenced defendant to active terms of imprisonment of twenty years for the armed robbery conviction and six months for the conviction of carrying a concealed weapon. The sentences were to run consecutively. The Court of Appeals affirmed defendant's convictions.[2] This Court allowed defendant's petition for discretionary review on 27 September 1983.

---

1. Codefendants Gonzalez and Crawford also were charged with larceny of a firearm as was defendant Woods. However, the charges of larceny of a firearm against all defendants were not submitted to the jury, the trial judge being of the opinion that the larceny charges merged with the robbery charges. Codefendant Gonzalez also was charged with larceny of an automobile.

2. The Court of Appeals found no error in the trial of codefendant Gonzalez, except on the issue of whether Gonzalez's custodial statement was voluntary. Therefore, the cause was remanded to the Superior Court, Montgomery County, for a determination of whether the extrajudicial statement made by Gonzalez was made voluntarily and understandingly. *State v. Gonzalez*, 62 N.C. App. 146, 302 S.E. 2d 463 (1983).

Defendant seeks a new trial and reversal of the Court of Appeals' decision affirming his convictions because of the allegedly erroneous and prejudicial admission of both codefendants' extrajudicial statements during the trial of their consolidated cases. For the reasons stated in this opinion, we agree with defendant's contention that one of his codefendant's extrajudicial statement was erroneously admitted at trial. Therefore, we reverse the decision of the Court of Appeals and grant defendant a new trial.

On Sunday night, 22 November 1981, Steven Dunn was the attendant at the Sandhills Union 76 Service Station in Candor, North Carolina. At approximately 8:50 p.m., a masked man, carrying a blue barrel gun, entered the store. He was wearing a light blue toboggan which had been pulled down over his face. The toboggan did not have any holes in it, and the man appeared to be looking through the fabric of the toboggan. The masked man demanded that Mr. Dunn put the store's money in a bag.

Shortly after the masked man entered the store, a regular customer of the store, Reverend William Turnmire, drove up to the gas pumps. The masked man became frightened and then ran and stooped down behind the counter where Mr. Dunn was standing. Mr. Dunn then gave the masked man the entire cash register drawer, which was later determined to have contained approximately $1,030.00.

As the masked man was running out of the back door of the store, he bumped into another man, who was wearing a toboggan pulled down over his face and a light blue leisure jacket. One of the two men said, "Let's get out of here," and they both ran from the service station. After both men had left the service station, Mr. Dunn and Reverend Turnmire observed a green Buick station wagon, which had been parked on a street beside the station, leaving the scene. Neither Mr. Dunn nor Reverend Turnmire could identify either of the masked men or the defendants.

Immediately after the masked men left the service station, Mr. Dunn discovered that his personal gun, a R.G. .38 Rohm pistol, which he had placed behind the counter at 3:00 p.m., was missing. He did not see anyone take the gun. He did remember that the gun had two bullets in it.

At approximately 9:45 p.m., a Biscoe police officer observed a green station wagon fitting the description of the vehicle involved

in the robbery. The officer pursued the vehicle which was later abandoned behind a house on a dead-end street. After the car disappeared behind the house, the pursuing officer heard a gun-shot which came from the general direction of the car. After other police officers had arrived at the scene, a search of the then unoccupied car revealed a cash register drawer, some clothes, a certificate of title and a bill of sale showing that the car was owned by Oscar Gonzalez.

At about 3:30 a.m. on 23 November 1981, Mr. Gonzalez was stopped while driving a silver Thunderbird. It was subsequently determined that the Thunderbird was stolen and Mr. Gonzalez was arrested. A subsequent search of Mr. Gonzalez led to the discovery of a roll of bills, totalling $1,039.00.

Sometime before 8:00 a.m. on that same morning, Star Police Chief W. L. Batten drove to the Quick Chek in Star, after receiving a call from a local citizen reporting that he had dropped off a nervous acting man at the Quick Chek.[3] Upon his arrival at the Quick Chek, Chief Batten talked to defendant Woods. Defendant Woods was wearing a blue leisure jacket. Chief Batten said Woods looked and acted "terribly nervous." While patting down the defendant, Chief Batten discovered a blue steel .38 caliber R.G. pistol. Defendant was then placed under arrest. It was later determined that the gun contained one spent shell casing and one live bullet.

During the course of the trial, Mr. Dunn identified the gun taken from the possession of defendant Woods as being his gun, which he had placed under the store counter prior to the robbery. Additionally, the allegedly sanitized versions of the extrajudicial statements of codefendants Gonzalez and Crawford were admitted into evidence.

None of the defendants presented any evidence.

I.

Defendant first contends that there was insufficient evidence adduced at trial to permit him to be convicted of armed robbery.

3. The testimony adduced at trial does not disclose when Chief Batten actually arrived at the Quick Chek. However, the testimony does show that Chief Batten was working the midnight to 8:00 a.m. shift.

Defendant argues that the evidence was insufficient to identify him as one of the perpetrators of the armed robbery. He also argues that the State's evidence is only circumstantial with inferences built upon inferences. Therefore, the question presented by defendant's assignment of error is whether the trial court erred in failing to dismiss the charge of armed robbery on the ground that the evidence was insufficient to support such a verdict.

This Court on numerous occasions has stated the principles that are applicable to a defendant's motion to dismiss. *State v. Lowery*, 309 N.C. 763, 309 S.E. 2d 232 (1983); *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). In *Lowery*, this Court summarized the general principles as follows:

> The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. *Powell*, 299 N.C. at 98, 261 S.E. 2d at 117; *See State v. Roseman*, 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971). In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Bright*, 301 N.C. 243, 257, 271 S.E. 2d 368, 377 (1980). Contradictions and discrepancies in the evidence are strictly for the jury to decide. *State v. Bolin*, 281 N.C. 415, 424, 189 S.E. 2d 235, 241 (1972).

> The trial court in considering a motion to dismiss is concerned only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence. *State v. McNeil*, 280 N.C. 159, 162, 185 S.E. 2d 156, 157 (1971). The test of whether the evidence is sufficient to withstand a motion to dismiss is whether a reasonable inference of defendant's guilt may be drawn from the evidence, and the test is the same whether the evidence is circumstantial or direct. *Bright*, 301 N.C. at 257, 271 S.E. 2d at 377. If

the trial court determines that a reasonable inference of defendant's guilt can be drawn from the evidence, then the defendant's motion to dismiss should be denied and the case should be submitted to the jury. *State v. Smith*, 40 N.C. App. 72, 79, 252 S.E. 2d 535, 540 (1979); *See State v. Rowland*, 263 N.C. 353, 358, 139 S.E. 2d 661, 665 (1965).

*Lowery*, 309 N.C. at 766, 309 S.E. 2d at 235-36. The familiar and often stated principles quoted above are applicable to defendant's assignment of error.

[1] In the instant case, the State's case against defendant was entirely circumstantial. Since no one could positively identify defendant as being one of the two masked men that robbed the service station, the State had to rely upon circumstantial evidence in order to place defendant at the scene of the crime. Therefore, the State chose to rely upon the doctrine of possession of recently stolen goods[4] to prove defendant's guilt. That doctrine holds that:

> The possession of stolen property recently after the theft, and under circumstances excluding the intervening agency of others, affords presumptive evidence that the person in possession is himself the thief, and the evidence is stronger or weaker, as the possession is nearer to or more distant from the time of the commission of the offense.

*State v. Patterson*, 78 N.C. 470, 472-73 (1878). Although the above quoted language states that the doctrine of possession of recently stolen property "affords presumptive evidence that the person in possession is himself the thief," it is more accurate to state that it raises an inference that the possessor is the thief. *State v. Joyner*, 301 N.C. 18, 269 S.E. 2d 125 (1980); *State v. Frazier*, 268 N.C. 249, 150 S.E. 2d 431 (1966). The inference of fact which is derived from possession of recently stolen goods is considered by the jury as an evidentiary fact along with all the other evidence in a case, in its attempt to determine whether the State has met its burden of proving defendant's guilt beyond a reasonable doubt

4. The doctrine is often referred to as the doctrine of recent possession of stolen goods or simply the doctrine of recent possession. However, the doctrine is more correctly stated in terms of possession of recently stolen goods.

to the satisfaction of the jury. *State v. Fair*, 291 N.C. 171, 229 S.E. 2d 189 (1976); *Joyner*, 301 N.C. at 28, 269 S.E. 2d at 132.

In order for the State to invoke the doctrine of possession of recently stolen goods, the State must prove beyond a reasonable doubt each fact necessary to give rise to the inference. *State v. Maines*, 301 N.C. 669, 273 S.E. 2d 289 (1981). In other words, the State must prove beyond a reasonable doubt that: (1) the property is stolen; (2) the stolen goods were found in the defendant's custody and subject to his control and disposition to the exclusion of others; and (3) the possession was recently after the larceny. *Id.* at 674, 273 S.E. 2d at 293. However, once the doctrine of possession of recently stolen goods is determined to apply in a given case, "it suffices to repel a motion for nonsuit [dismissal] and defendant's guilt or innocence becomes a jury question." *Id.* This doctrine has been applied in an armed robbery case. *See State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741 (1967).

**[2]** The evidence in the instant case tended to show that Mr. Dunn placed his gun under the counter of the service station at 3:00 p.m. when he began work. During the course of the robbery, the masked gunman hid behind the counter where the gun had been placed in order to avoid detection by a customer of the service station. Mr. Dunn gave the cash register drawer and the cash contained therein to the masked gunman as he hid behind the counter. As the masked gunman left the service station, he ran into another masked man wearing a blue leisure jacket, and after exchanging words, both men ran from the service station together. Mr. Dunn noticed that his gun was missing immediately after the robbers left the service station. Police Chief Batten testified that the gun, which Mr. Dunn had identified as belonging to him, was taken from the person of defendant Woods when he was arrested hours after the robbery.[5] At the time of defendant's arrest, he was wearing a light blue leisure jacket matching the description of the one worn by one of the persons who robbed the service station. Further testimony of Chief Batten tended to show that defendant appeared "terribly nervous" while he [Batten] was talking to him. Defendant also falsely told Chief Batten that he

5. As stated in Footnote 3, the record evidence does not disclose the exact time Chief Batten arrived at the Quick Chek. The evidence also does not disclose the exact time defendant Woods was arrested.

worked at a local mill in town, in addition to giving him a false name for purposes of identification.

The above evidence clearly supports a finding that the State's evidence was sufficient to invoke the doctrine of possession of recently stolen goods. The State's evidence tends to prove that the stolen gun was found in defendant's exclusive possession recently after the armed robbery.

Defendant admits that the evidence was sufficient to permit the inference that he stole Mr. Dunn's gun, but he contends the evidence is insufficient to permit the "further inference that he took the cash drawer and cash that was the subject of the armed robbery." Therefore, defendant contends that the State is trying to prove his guilt of stealing one item of property upon a theory that he was in possession of another item of property "claimed to have been" stolen at the same time.

Defendant's argument is without merit. The State's evidence tends to show that the gun, which was stolen at the same time as the cash register drawer, was discovered in defendant's possession within several hours after the armed robbery. Therefore, based upon the doctrine of possession of recently stolen goods, defendant was placed at the scene of the crime at the time the crime was committed. The testimony of Mr. Dunn and Police Chief Batten also supports the conclusion that defendant was present and actually participated in the robbery. Mr. Dunn testified that both robbers had blue toboggans pulled down over their faces. He also stated that as one of the robbers was leaving the service station, he ran into the other robber, who was wearing a light blue leisure jacket and one of them stated, "Let's get out of here." Then, both men ran from the service station. Chief Batten testified that when defendant was arrested he was wearing a light blue leisure jacket, similar to the jacket which Mr. Dunn stated was worn by the robber who remained outside the service station.

After the State had produced the above evidence which tends to show that defendant was present at the scene of the crime and actually participated in the armed robbery, it became a question for the jury as to whether defendant was acting in concert with the other robber who was inside the service station, which was the theory upon which defendant's conviction of armed

robbery was predicated. If the jury believed—as they obviously did—that defendant was acting in concert with the other robber, the question of whether he or the other robber actually stole the cash register drawer and its cash contents was irrelevant. Under the doctrine of acting in concert, it is not necessary that defendant do any particular act constituting a part of the crime, as long as he is present at the scene, and there is sufficient evidence to show that he is acting together with another or others pursuant to a common plan or purpose to commit the crime. *State v. Forney*, 310 N.C. 126, 310 S.E. 2d 20 (1984); *State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). Therefore, since the State's evidence tends to show that defendant was present at the scene of the crime and actually participated in the armed robbery, defendant could be found guilty of armed robbery without the State's reliance upon improper inferences. Defendant's assignment of error is overruled.

## II.

Defendant next contends that he was "deprived of his right to a fair trial by the consolidation of his trial with the trial of defendants Gonzalez and Crawford and the resulting admission of the expurgated extrajudicial statements of defendants Gonzalez and Crawford without a limiting instruction." Defendant's basic contention is that he was denied his sixth amendment right to confront the witnesses against him by the trial court's erroneous admission of the extrajudicial statements of the two non-testifying codefendants being tried with him. Stated more specifically, defendant contends that the trial court violated the holdings in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968) and *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), *reh'g denied*, 332 U.S. 856 (1948), by admitting the extrajudicial statements of the other two codefendants and by failing to give a limiting instruction after their admission.

At trial, the State called the cases of Oscar Garcia Gonzalez, Ralph Woods, Jr., and Ervin Calvin Crawford together. Codefendants Gonzalez and Crawford objected to the consolidation of the cases for trial and made motions for separate trials.[6] They argued

---

6. We note that defendant's counsel did not object to the joinder of charges against the multiple defendants in this case. At trial, defendant's counsel stated to

.that since each defendant had made an extrajudicial statement which incriminated the other two defendants, it would be impossible to sufficiently sanitize the statements so that they could be fairly and legally used at trial. The State contended that, if it decided to introduce the statements of any of the defendants, "those statements would not implicate any other people."

The trial judge denied both codefendants' motions for separate trials. The trial judge ruled that sanitized versions of the statements of each codefendant would be admissible but only to the extent that the statements "detail the involvement of [the declarant] . . . and not as to the other two."

During the course of the trial the allegedly sanitized statements of codefendants Gonzalez and Crawford were introduced into evidence. Captain Walser testified that codefendant Gonzalez made the following statement:

> On November the 22nd, 1981, on a Sunday night, myself, Oscar Garcia Gonzalez, drove to a service station convenient [sic] store near Candor. I was riding in my vehicle, a green Buick stationwagon with mag wheels. I drove up to the store. I was parked near the back door. A customer came into the lot so I went into the store. I drove onto the road and then turned right. I stopped after traveling one mile or one and one-half miles and got into the back seat and took all the money from the cash drawer. After traveling about five minutes the police got behind me. I turned down a road which was a dead end. The car was stopped and I was getting ready to run when I heard a shot. I thought it was the police shooting so I ran. I ran into the woods and hid. I stayed there until the law left. I found a car with the keys in it which was a grey Ford LTD or Thunderbird. I drove the car away and was stopped by the law.

Deputy Green testified that codefendant Crawford made the following statement:

---

the court: "I have not joined in this matter at this time. It appears to me that if you grant the motion, it's already made and any argument I would make would be moot." Defendant's counsel also did not move for severance at any time during the trial. However, pursuant to N.C. Gen. Stat. § 15A-1446(b), in the interest of justice we review the assignments of error raised by defendant relating to the consolidation of the charges for trial.

I left my cousin's, James Pearson, house in Aberdeen and was headed back to High Point, North Carolina, and stopped the car at the next service station I saw open. I was driving the vehicle. It was a 76 station, had a 76 on a big round ball type sign. I thought the bathrooms were on the back side of the building with an outside entrance. This is why I parked where I did. I wasn't paying attention. I was smoking a joint. I never observed any mask. The front right door was unlocked all the time, the back door was locked. I never observed a gun. I don't recall seeing a black plastic drawer. I was pretty high on reefer by now. I ease off and drive approximately one-fourth mile and pull over, I get out of the vehicle. I went to Star and kept on walking north until a subject drove by me and turned into a driveway. I ask him if I could use the telephone. He said his parents were asleep but he would check. They said okay. I called my wife but she didn't have the car. My niece had it. I ask him for a ride to Asheboro to the bus station. He said he would take me to Seagrove. We started out. Then he decided that he didn't have enough gas to make it. We turned around and went to Biscoe for gas. I don't recall his name, but he was a white young male. His car was a blue Toyota Celica I think. I realized his father was following us near Seagrove. The father flashed his lights and pulled along side. The boy said that's my dad so we stopped. His dad advised him where—his dad asked him where he was going and he said Seagrove. His dad told him to get on back home because the Union 76 had been robbed. We then went on to Seagrove where I got out at Quick Chek. His father followed us on to the Quick Chek. I stood there for a few minutes, got cold again, so I started to walk facing traffic north. A man stopped and picked me up. I don't recall what type of vehicle it was except it was a small car. A black man was driving. He carried me all the way home. I didn't know the man or his name. He said he was headed to Greensboro. I told him I was headed to High Point and my car broke down. He said he had seen a car down the road and I told him that was it. He said he would take me home. I arrived home about 12:30 a.m., December the 23rd, '81. About 1:00 a.m.—correction—November the 23rd, '81. About 1:00 a.m., November the 23rd, 1981, we received a call from the Police Department. I then told her what had hap-

pened. The police never talked to me in person until today in court. Officer Ramseur said he needed to talk to me about an armed robbery in Montgomery County. *I told him I was with some guys, but that I didn't rob anyone, they did.* I told him I was ready to clear up the matter and he called Montgomery County and advised them I was ready for pickup. I asked him specific questions. Did you see a gun at anytime that night? His answer, no, sir. Do you own a blue denim type sports blazer? His answer, I own a blue jacket. It is a thin jacket, almost see through. Question, where is it? Answer, at my mother's. [I]t is navy blue. Question, did you know the black man that stopped for you? Answer, I did not know him. Question, do you have kin folks in this area? Answer, No, sir. Question, do you know any people that lives [sic] in this area? Answer, I used to know a girl in Troy in 1971, Reginia Williams. Question, is there anything you want to add? Answer, I can't understand how I can be charged with this armed robbery and larceny of a firearm. I never set foot on the premises. (Emphasis added.)

The jury was not instructed that the above statements could only be considered as evidence against codefendants Gonzalez and Crawford respectively.

Defendant contends that the admission of the extrajudicial statements of codefendants Gonzalez and Crawford violated the holding in *Bruton.* In *Bruton,* the United States Supreme Court held that in a joint trial the admission of a non-testifying co-defendant's extrajudicial confession, which implicates his co-defendants, is a violation of the codefendant's "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126, 88 S.Ct. at 1622, 20 L.Ed. 2d at 479. The Supreme Court held that the giving of limiting instructions by the trial judge was not a "substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all." *Id.* at 137, 88 S.Ct. at 1628, 20 L.Ed. 2d at 485-86.

This Court recognized that the holding in *Bruton* was binding upon this State in *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968). In *Fox,* this Court stated that the effect of *Bruton* on criminal trials in this State was as follows:

The result is that in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately.

*Id.* at 291, 163 S.E. 2d at 502. In response to *Bruton* and *Fox*, the General Assembly enacted N.C. Gen. Stat. 15A-927(c)(1) which provides:

(c) Objection to Joinder of Charges against Multiple Defendants for Trial; Severance.

(1) When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court must require the prosecutor to select one of the following courses:

a. A joint trial at which the statement is not admitted into evidence; or

b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or

c. A separate trial of the objecting defendant.

In addressing defendant's assignment of error concerning the alleged *Bruton* violation, the Court of Appeals found no error in the admission of the statement of codefendant Gonzalez. *State v. Gonzalez*, 62 N.C. App. 146, 302 S.E. 2d 463 (1983). The Court of Appeals noted that the confession of codefendant Crawford, by inference, implicated defendant Woods, thus violating the holding in *Bruton*. However, the Court of Appeals found that prejudicial error had not been committed because the record showed that counsel for defendant received sanitized versions of the statement before they were presented to the jury, "yet no objections were made before the statement was read to the jury." *Gonzalez*, 62 N.C. App. at 154, 302 S.E. 2d at 468. Therefore, the Court of Appeals stated:

Thus, we hold that they waived their opportunity to object and in essence invited the error. The inadmissibility of evidence is waived by a defendant's failure to make timely objection when he had an opportunity to learn that the evidence was objectionable. *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972); *State v. Jeeter*, 32 N.C. App. 131, 230 S.E. 2d 783, *disc. rev. denied*, 292 N.C. 268, 233 S.E. 2d 394 (1977). "Invited error is not ground for a new trial." *State v. Payne*, 280 N.C. 170, 171, 185 S.E. 2d 101, 102 (1971).

*Id.*

We agree with the ruling of the Court of Appeals that the extrajudicial statement of codefendant Gonzalez was not prejudicial to defendant Woods. The statement of codefendant Gonzalez did not mention defendant Woods or make reference to him in any way. Therefore, we hold that the statement of codefendant Gonzalez did not violate the holdings in *Bruton* and *Fox* or the statutory mandate of N.C. Gen. Stat. 15A-927(c)(1).

[3] However, we reach the contrary decision concerning the extrajudicial statement of codefendant Crawford. The extrajudicial statement of codefendant Crawford contained the following: "I told him I was with some guys, but that I didn't rob anyone, they did." Since defendant Woods and codefendant Gonzalez were being tried jointly with codefendant Crawford, and since only two persons were seen in the service station at the time of the robbery, this statement clearly implicated defendant Woods. Since codefendant Crawford did not testify at trial, the introduction of this extrajudicial statement constitutes error and, without a doubt, violates *Bruton, Fox,* and N.C. Gen. Stat. 15A-927(c)(1). In short, defendant was denied his "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed. 2d at 479.

[4] Contrary to the conclusion of the Court of Appeals, we find no evidence to support a finding that defendant's counsel waived his right to object to the admissibility of the statement or invited the above mentioned error. The record evidence shows that on 21 June 1982 the trial court ordered the State to sanitize the extrajudicial statements of all the defendants before the statements would be deemed admissible. However, the allegedly sanitized versions of the codefendants' statements were not given to de-

fendant's counsel until two days later, on 23 June 1982, during the course of the trial and immediately preceding the admission of the statement of codefendant Gonzalez. Thereafter, the trial continued with the State presenting its evidence. Aside from one fifteen minute recess during the trial and prior to the admission of the statement of codefendant Crawford, it appears that the defendant's counsel did not have a reasonable amount of time to review the extrajudicial statements.[7] Immediately after the statement of codefendant Crawford was read into evidence, counsel for defendant Woods moved to strike that portion of the statement which implicated defendant.[8]

Based on the foregoing evidence, we are convinced that defendant's motion was timely made in view of the belated tender of the allegedly sanitized statements and the continuing trial. We do not find any conduct on the part of defendant's counsel which would support a finding of waiver or invited error. *But see State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975), *death sentence vacated*, 428 U.S. 904 (1976) (defendant not prejudiced by evidence that defendant had been declared an outlaw where such evidence was initially and repeatedly disclosed by defendant's own counsel); *State v. Payne*, 280 N.C. 170, 185 S.E. 2d 101 (1971) (an initial statement by defense counsel that he has no objection to the court reporter reading a witness' prior testimony to the jury for purposes of clarification bars the right to assign as error on appeal that the trial court improperly allowed the court reporter to read such testimony). If anything, the evidence shows that the State invited a new trial in this case by failing to adequately sanitize the extrajudicial statements in accordance with the trial judge's instructions and the specific mandates of *Bruton, Fox* and N.C. Gen. Stat. 15A-927(c)(1).

---

7. The transcript does show that the trial was stopped in order for the clerk to make copies of the "sanitized" versions of the extrajudicial statements of the defendants prior to the admission of the Gonzalez statement. However, we cannot determine how much time the attorneys had to review these statements after the clerk returned with their respective copies.

8. We note that even though counsel for defendant only made a motion to strike, such motion had the same effect as an objection in terms of preserving the alleged error for appellate review. *See* N.C. Gen. Stat. § 15A-1446(a). The Court of Appeals referred to this motion as an objection.

Since the erroneous admission of codefendant Crawford's statement deprived the defendant of a right arising under the Constitution of the United States, prejudice is presumed. N.C. Gen. Stat. § 15A-1443(b). The error is not harmless beyond a reasonable doubt; therefore, defendant is entitled to a new trial. *Id. See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705, *reh'g denied,* 386 U.S. 987 (1967).

In view of our conclusion that the trial judge erred in admitting the extrajudicial statement of codefendant Crawford—an error which entitles defendant to a new trial—we do not reach the question of whether the trial court also erred by failing to give limiting instructions to the jury after the admission of the extrajudicial statements of codefendants Gonzalez and Crawford.

In conclusion, we hold that defendant is entitled to a new trial. Thus, the decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further remand to the Superior Court, Montgomery County, in order that a new trial may be conducted.

Reversed and remanded.

Justice MEYER dissenting.

I respectfully dissent from the majority's conclusion that the defendant is entitled to a new trial for violation of his sixth amendment right of confrontation because of the admission of codefendant Crawford's extrajudicial statement. The record clearly supports the finding by the Court of Appeals that defendant waived his objection to the reading of the statement. Nor do I agree with the majority that Crawford's statement incriminates the defendant. The decision in *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476 (1968), does not dictate the result reached in this case. Our decision in *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858 (1972), supports a contrary result.

The majority boldly concludes that defendant's motion to strike the allegedly inculpatory portion of Crawford's statement "was timely made" in view of the State's "belated tender" of the sanitized version of the statement because "it appears that the defendant's counsel did not have a reasonable amount of time to review the extrajudicial statement." In short, the majority adopts

a novel, as yet undefined, "reasonable amount of time" rule to excuse defense counsel's failure to object prior to the reading of the statement.

On the subject of "reasonable amount of time to review" the statement in question, the majority says this:

> Contrary to the conclusion of the Court of Appeals, we find no evidence to support a finding that defendant's counsel waived his right to object to the admissibility of the statement . . . . The record evidence shows that on 21 June 1982 the trial court ordered the State to sanitize the extrajudicial statements of all the defendants before the statements would be deemed admissible. However, the allegedly sanitized versions of the codefendants' statements were not given to defendant's counsel until two days later, on 23 June 1982, during the course of the trial and immediately preceding the admission of the statement of codefendant Gonzalez. Thereafter, the trial continued with the State presenting its evidence. Aside from one fifteen minute recess during the trial and prior to the admission of the statement of codefendant Crawford, it appears that the defendant's counsel did not have a a reasonable amount of time to review the extrajudicial statements.[7]

> 7. The transcript does show that the trial was stopped in order for the clerk to make copies of the "sanitized" versions of the extrajudicial statements of the defendants prior to the admission of the Gonzalez statement. However, we cannot determine how much time the attorneys had to review these statements after the clerk returned with their respective copies.

One can draw several possible inferences from the majority's discussion of its new "reasonable amount of time" rule: first, counsel was not afforded a reasonable amount of time to review the sanitized statement because it was not disclosed until during the trial; or second, we must automatically assume conclusively that fifteen minutes is never a sufficient amount of time; or, third, that one must make that same assumption whenever the record fails to reflect what amount of time in excess of fifteen minutes

counsel had to review the sanitized statement. I find no support for any of these propositions.

I read nothing in G.S. § 15A-927(c)(1) or G.S. § 15A-903(b), under our discovery statute, that would *require* a codefendant's sanitized extrajudicial statement to be disclosed prior to trial. The fact that defense counsel is not afforded pretrial statements of the State's witnesses until after those witnesses have testified at trial on direct examination, *see* G.S. § 15A-903(f), militates strongly against the argument that counsel cannot be expected (or is unable) to review the sanitized version of a codefendant's statement during trial. As the majority notes, prior to the admission of Crawford's statement, the trial judge ordered a recess. Had defense counsel required more time to review the statement, he was free to so request, as is the procedure adopted in G.S. § 15A-903(f). That section provides that upon defendant's request, the court "may recess proceedings in the trial for a period of time that it determines is reasonably required for the examination of the statement . . . ."

Additionally, I find no basis in case law or statute to support the majority's assumption that counsel's failure to object to a portion of a sanitized statement is inevitably due to a lack of sufficient time to review the statement. Defense counsel's own admission to the trial judge belies such a conclusion, but rather attributes the failure to the fact that counsel himself had overlooked that portion when he reviewed the statement:

> I move to strike that portion of the statement as follows; I was with some guys but I didn't rob anyone, they did. I think that ties and puts all meaning back into the statement as was originally there. And I'm sorry I overlooked this when I read the statement, but apparently—I don't think it's being sanitized enough, to use the D.A.'s termonology [sic].

> THE COURT: All right. Motion denied. Let the record show that the Court prior to statements being presented in open court instructed the District Attorney to make all statements available to counsel for the defendants, that the Clerk made copies of the statements and a copy of each statement from Gonzalez and Crawford were presented to the defendants and their counsel, that no objections were made to the statements in the form presented at that time. Let the

record further show that at the time the officer read the statement no objections were made to anything that was stated at that time. The objection came after the statement had been completed. Motion denied.

I believe the trial judge properly denied defendant's motion to strike and furthermore I would hold, as did the Court of Appeals, that defendant waived any objection by failing to timely object.

Nor can I agree with the majority's conclusion that "the introduction of this extrajudicial statement constitutes error and, without a doubt, violated *Bruton, Fox,* and N.C. Gen. Stat. 15A-927(c)(1)." Embedded within the straightforward, innocuous account of Crawford's version of the events, is the objected-to statement: "I told him I was with *some guys,* but that I didn't rob anyone, *they* did." (Emphasis added.) This one statement, containing a reference to *some guys,* unnamed and unidentified, at most, may be said only to *obliquely* incriminate the defendant, and certainly does not rise to the level of the "powerfully incriminating extrajudicial statements of a codefendant," which were "deliberately spread before the jury" in *Bruton. Id.* at 135-36, 20 L.Ed. 2d at 485. If the *Bruton* rule is to be applied with practicality and common sense, it affords no precedent whatsoever which would redound to defendant's benefit in this case. I consider the majority's broad extension of the *Bruton* rule completely unwarranted and very unwise. I find no precedent in any jurisdiction which would support it.

This Court, as well as the Court of Appeals,[1] has, in the past, taken a practical and common sense approach to the rule

1. In *State v. Freeman,* 31 N.C. App. 335, 337-38, 229 S.E. 2d 238, 240 (1976), the original statement read:

"Me and Lawrence I don't know his last name, he is Bill's half brother, were riding around in Lawrence's car, a '66 or '67 Pontiac gray station wagon. We went to Eddie's Grocery. Lawrence had a shotgun. We parked beside the store. We both went inside and demanded the money. We picked up Bill Alexander at Mooresville Drug. We went toward Coddle Creek and had a flat tire. Me and Bill went through the woods. Lawrence stayed with the car. We went to James Reid's house to get him to take us to Bill's house. We took the shotgun and rifle and asked him to keep them for us. Shortly after we left the police got behind us. I threw the money out of the car. Then the police stopped us."

Together the State and defense attorney sanitized the statement as follows:

State v. Gonzalez

enunciated in *Bruton*. In *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858, this Court considered statements attributed to a codefendant which defendant contended were inculpatory. These statements consisted of the following: "that there were six of us involved," "the stamps were stolen out of a safe in Lumberton," "they had to use a truck." We noted that "[n]o statement attributed to Sterling [the codefendant] contains a reference to Phillip [the defendant] *by name* or identifies him in any other way. The *sine qua non* for application of *Bruton* is that the party claiming incrimination without confrontation at least be incriminated." *Id.* at 340, 185 S.E. 2d at 869. I find the facts in the present case more compelling than in *Jones* and would hold that defendant was not incriminated by Crawford's one reference to "some guys."

Justices COPELAND and MITCHELL join in this dissenting opinion.

---

"Me and two other guys were riding around in a car. We went to Eddie's Grocery; we had a shotgun; we parked beside the store—I and one of the other guys went in the store and demanded the money; then we went toward Coddle Creek and had a flat tire. Then I and one of the men went through the woods; the other guy remained with his car. I and the other man went to ·James Reid's house to get him to take us home; we took the shotgun and a rifle and asked Reid to keep them for us. Shortly after the police got behind us and I threw the money out of the car; then the police stopped us."

The Court of Appeals concluded:

"In reviewing the above portions of the trial record, it is apparent to this Court that the trial judge admitted Nichols' statement only after modifying it in accordance with the *Fox* decision. He admitted the extrajudicial confession only after deleting all parts that referred to or implicated the defendant. It is manifest that the statement admitted into evidence did not tend to incriminate the defendant Freeman. The statement merely indicated that Nichols had an accomplice and it in no way indicated the identity of that accomplice. Defendant's right to confrontation was therefore not infringed and the trial judge did not err in admitting the modified confession."