STATE OF NORTH CAROLINA v. RAY HAMBY

— AND —

STATE OF NORTH CAROLINA v. CRAIG BARRY CHANDLER

No. 4

(Filed 12 June 1970)

1. Homicide § 21— first-degree murder — sufficiency of evidence — premeditation and deliberation — intoxication of defendants

In a prosecution charging two defendants with the first-degree murder of a 74-year-old man by slitting his throat and by hitting him over the head with a cue stick, notwithstanding there was evidence of the State which raised an inference that at the time of the murder the judgment and dexterity of the defendants had been impaired by intoxication, the State's evidence was sufficient to establish that each defendant had formed the specific intent to kill deceased and that this intent was preceded by premeditation and deliberation; consequently, the issue of defendants' guilt of murder in the first degree was properly submitted to the jury.

2. Homicide § 21— first-degree murder — elements of proof

In order to convict a defendant of first-degree murder, the State is required to produce evidence which satisfies the jury beyond a reasonable doubt that he unlawfully killed the deceased with malice and in the execution of an actual specific intent to kill, formed after premeditation and deliberation.

3. Homicide § 8— first-degree murder — effect of intoxication

If, at the time of the killing, a defendant was so drunk as to be utterly incapable of forming a deliberate and premeditated intent to kill the deceased, defendant could not be guilty of murder in the first degree, for an essential element of that crime would be lacking.

4. Homicide §§ 4, 8— intoxication — effect on premeditation and deliberation

Whether intoxication and premeditation can coexist depends upon the degree of inebriety and its effect upon the mind and passions; no inference of the absence of deliberation and premeditation arises, as a matter of law, from intoxication.

5. Criminal Law § 106— nonsuit — evidence exonerating defendant

When the State's evidence tends only to exonerate a defendant from a particular charge, his motion for judgment of nonsuit or a directed verdict as to that charge should be allowed.

6. Homicide § 8— intoxication of defendant — effect on intent to kill — jury question

As a general rule, it is for the jury to determine whether the mental condition of the accused was so far affected by intoxication that he was unable to form a guilty intent to kill, unless the evidence is not sufficient to warrant the submission of the question to the jury.

**7. Homicide § 18— premeditation and deliberation — indicia of proof**

The indicia of premeditation and deliberation include: want of provocation on the part of the deceased; the conduct of defendant before and after the killing; threats and declarations of defendant before and during the course of the occurrence giving rise to the death of the deceased; the dealing of lethal blows after deceased has been felled and rendered helpless.

APPEAL by defendants under G.S. 7A-27(a) from *Hasty, J.,* 8 September 1969 Session of LINCOLN.

Defendants, Ray Hamby and Craig Barry Chandler, were tried upon separate but identical bills of indictment in which each was charged with the first-degree murder of Alfred Hendricks. On 8 September 1969 defendants were arraigned and the cases consolidated for trial. Both defendants were represented by court-appointed counsel and entered pleas of not guilty.

Defendants are two young white men. The deceased, Alfred Hendricks was a white man about 74 years old. He lived alone on a dirt road between Lincolnton and Maiden in the community of Providence. The leading witness for the State was 13-year-old Mildred Grant. She testified in substance as follows:

She saw defendants about 8:00 p.m. on the evening of 7 April 1969 at the home of her sister, Jeanette Pritchard. They brought with them 24 small cans of beer and two pint bottles of wine. Mildred, Jeanette and the two defendants consumed the wine and 18 cans of the beer. Sometime during the evening the four went to the home of Hendricks, and Mildred borrowed $10.00 from him. She and Hendricks had been friends for six or seven months, and it was her custom to visit him for about a half an hour on Mondays and Tuesdays. Two weeks earlier he had loaned her $5.00.

About 11:30 p.m. the two defendants left Mildred at her sister's home, and she went to bed. Sometime after midnight, however, defendants returned to get Mildred to go with them to "Hoyle's No. 2" on the Maiden highway for some drinks. Chandler was drunk, and Hamby drove the automobile to Hoyle's, where they got three drinks (what kind of drinks, the evidence does not disclose). Thereafter, about 1:30 a.m. on 8 April 1969, Mildred and the two defendants went back to Hendricks' home. He opened the door for Mildred and went back to bed. When she requested more money he told her he had only $63.00 and no change. As she turned to leave, defendants came in. Chandler hit Hendricks on the head with a flashlight three or four times. Hamby jumped on top of Hendricks in the bed and attempted to smother him. Chandler took the $63.00 out of Hen-

dricks' pocket and gave it to Mildred. She returned $10.00 to Chandler, gave Hamby $20,00, and kept $33.00 for herself.

Hendricks was bleeding from the head. Defendants got him out of the bed, washed his face with a cloth, and dressed him. They then collected two pounds of ham, a dozen eggs, six soft drinks, and a box of cartridges. They wrapped these items in two sheets and a pillow-case and put them in the car. They also took Hendricks' television and a pillow from his bed. Hamby found a can of kerosene and, before leaving the house, poured it on the floors. His final act was to throw a burning cigarette lighter into the house. It was then about 2:00 a.m. Defendants (according to Mildred) "wasn't as drunk as they could be." They put Hendricks in the back seat of the auto-mobile with Chandler. Mildred got in the front with Hamby, who drove the car to a deserted spot on a dead-end dirt road in Lincoln County.

En route Hamby told Hendricks that he had better smoke his cigarette because it would be the last one he would get. He also told Hendricks that if he would give him a gun he would not kill him. Hendricks said he did not know where a gun was. When Hamby stopped the car the three got out, and Hamby hit Hendricks over the head with a cue stick, which the old man had used as a cane. Hendricks fell to the ground, and "Hamby slit his throat twice with a knife." Chandler then "jobbed (him) in the side of the head with a knife." When the knife broke, Chandler "got mad and stomped Hendricks in the belly." After that he took a piece of wire and tied Hendricks' hands. Defendants then burned the pillow and, about 3:00 a.m., they left Hendricks lying on the ground with his throat cut and his head "busted open."

The three went back to Jeanette's home and got her out of bed. The four then went to Newport, Tennessee. Defendants shared the driving over "winding, difficult mountain roads." The trip to New-port took about three and one-half hours. After two hours there they began the return trip and arrived at Mildred's home in Lincoln County sometime after noon. At unspecified times between 8:00 p.m. on 7 April 1969 and defendants' return to Lincoln County from Tennessee, Mildred saw Hamby take three green pills with beer and wine.

Other evidence for the State tended to show: On Wednesday morning, 9 April 1969, after defendant Chandler had breakfasted at a grill with his friend, Danny Smith, he told Smith he had killed a man. Smith thought he was joking, but Chandler kept repeating the statement. Finally he bought Smith $2.00 worth of gas and asked

him to drive to a place behind Tojo Peeler's on highway No. 27, about two miles west of Lincolnton. At first, Smith could not locate the spot and accused Chandler of "killing his time." Chandler said, "Go up one more road and if you see a pillow as you go up the road, there's where he lays." Smith followed instructions and soon saw the pillow and the body of Hendricks, which was down an embankment. He immediately left the scene, stopped at the first filling station, and telephoned the police while Chandler remained in the car. Officers came to the filling station, took custody of Chandler, and went to the place where Hendricks' body lay. "His hands were tied in front of him. His throat was cut, and his head was swelled out of proportion. You couldn't identify him." A broken cue stick, a pair of glasses, false teeth, flashlight batteries, "a plug," the head of a flashlight, three unfired 22-magnum cartridges, a bloody handkerchief, and pieces of burned cloth were scattered on the ground near the body.

At Hendricks' home, officers found the front and back doors shut but unlocked. On the front steps was an open cigarette lighter bearing the initials "R. H." There were puddles of kerosene on the uneven floors of the kitchen and bedroom. Two spots of blood stained the kitchen floor and two washcloths were on the table. In the bedroom, the bed was turned upside down.

An autopsy revealed a large fracture extending across the vertex of Hendricks' skull, numerous cuts and superficial abrasions on each side of the head, and three deep cuts on the right side of the neck. Both the jugular vein and the carotid artery had been lacerated. A cut extended from under the right side of the chin deep into the floor of the mouth and another began in the upper lip and extended to the nostril. Either the cuts in the neck or the injuries to the brain resulting from the fractured skull would have caused death.

At the conclusion of the State's evidence defendants' motion for judgment of nonsuit on the charge of murder in the first degree was overruled. Defendants offered no evidence. The jury found each "guilty of murder in the first degree." As required by the law, the Court sentenced each defendant to death. Both appealed.

*Robert Morgan, Attorney General; Ralph Moody, Deputy Attorney General; and Donald M. Jacobs, Staff Attorney, for the State.*

*M. T. Leatherman and Sheldon M. Roper for defendant-appellants.*

SHARP, J.

[1]   Defendants bring forward one assignment of error. They spe-

cify that the only question presented by this appeal is whether the court erred in overruling their motion for judgment of nonsuit on the charge of murder in the first degree. They contend that "the State offered positive, direct and substantial evidence that the defendants were drunk before and at the time the crime was committed and therefore could not have acted with premeditation and deliberation."

[2-4]     In order to convict each defendant the State was required to produce evidence which satisfied the jury beyond a reasonable doubt that he unlawfully killed Hendricks with malice and in the execution of an actual specific intent to kill, formed after premeditation and deliberation. If, at the time of the killing, either defendant was so drunk as to be utterly incapable of forming a deliberate and premeditated intent to kill Hendricks, he could not be guilty of murder in the first degree, for an essential element of that crime would be lacking. *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560, and the cases cited therein. However, whether intoxication and premeditation can coexist depends upon the degree of inebriety and its effect upon the mind and passions. "No inference of the absence of deliberation and premeditation arises from intoxication, as a matter of law." *State v. Murphy,* 157 N.C. 614, 619, 72 S.E. 1075, 1077. "[A] person may be excited, intoxicated and emotionally upset, and still have the capability to formulate the necessary plan, design, or intention to commit murder in the first degree." *State v. Thompson,* 110 Utah 113, 123, 170 P. 2d 153, 158.

[5]     Judge Hasty fully explained the foregoing principles to the jury in a charge which defendants do not attack. The specific question for decision is whether all the State's evidence, when considered in the light most favorable to the State, tends to show that either defendant (or both of them) was so intoxicated at the time of the killing that he was utterly incapable of forming a deliberate and premeditated purpose to kill Hendricks. If reasonable minds must agree that all the evidence points unerringly to that conclusion, the judge should have withdrawn the issue of defendants' guilt of murder in the first degree from the jury. When the State's evidence tends only to exonerate a defendant from a particular charge his motion for judgment of nonsuit or a directed verdict as to that charge should be allowed. *State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461; *State v. Jarrell,* 233 N.C. 741, 65 S.E. 2d 304; *State v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740; *State v. Todd,* 222 N.C. 346, 23 S.E. 2d 47; 2 Strong, N. C. Index 2d *Criminal Law* § 106 (1967). However, if there is any evidence which reasonably tends to show that defend-

ants formed the specific intent to kill Hendricks and that this intention was preceded by premeditation and deliberation, their motions were properly overruled. *State v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904.

**[6]** Defendants have cited no case, and our research has revealed none, in which any court has dismissed a charge of murder in the first degree on the ground that all the evidence tended to show a degree of intoxication which negated the possibility of premeditation and deliberation as a matter of law. On the contrary, when a defendant has committed an overt lethal act, the decision has been that whether his "intoxication (was) so gross as to preclude a capacity intentionally to kill is normally a fact issue for the jury to resolve." *King v. State,* 80 Nev. 269, 272, 392 P. 2d 310, 311. As stated in 23A C.J.S. *Criminal Law* § 1131 (1961), "As a general rule, it is for the jury to determine whether the mental condition of accused was so far affected by intoxication that he was unable to form a guilty intent, unless the evidence is not sufficient to warrant the submission of the question to the jury." *See State v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684; *State v. Hammonds,* 216 N.C. 67, 3 S.E. 2d 439 for comments indicating the court's belief that the defendant's conduct at the time of the homicide was incompatible with "his defense of drunkenness and mental irresponsibility."

**[7]** The following indicia of premeditation and deliberation are listed in *State v. Faust,* 254 N.C. 101, 107, 118 S.E. 2d 769, 773: Want of provocation on the part of the deceased; the conduct of defendant before and after the killing; threats and declarations of defendant before and during the course of the occurrence giving rise to the death of the deceased; the dealing of lethal blows after deceased has been felled and rendered helpless. *Accord, State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484.

**[1]** In this case there was ample evidence to establish that defendants killed Hendricks with malice after having deliberated and premeditated his murder. Judge Hasty correctly overruled the motion to dismiss the charge of murder in the first degree. Although the evidence with reference to their intoxication raises the inference that the judgment and dexterity of each were impaired, we cannot say as a matter of law that defendants were so intoxicated as to be incapable of premeditated murder. On the contrary, the evidence of premeditation and an actual, specific intent to kill fully justified the jury's verdict: (1) Defendants went to Hendricks' home for the specific purpose of obtaining money. (2) When he was reluctant to give them more money, each defendant, without the slightest provo-

cation and by concerted action, attacked him as he lay helpless in bed. (3) Chandler took from Hendricks' pocket the money defendants had come to get, and they then looted the house. (4) Defendants forcibly removed Hendricks from his bed, dressed him, and put him in their automobile. (5) Except for the television, which they put in the trunk of the automobile, defendants wrapped the stolen articles in bedclothes taken from Hendricks' bed. (6) In an attempt to conceal their crime, defendants attempted to burn down the house by pouring kerosene on the floors. The plan failed because Hamby's aim was poor and his lighter fell short of the mark. (7) Defendants then proceeded with Hendricks to a deserted spot previously known to them. (8) En route Hamby told Hendricks (a) that he would not kill him if he would get them a gun, and (b) that Hendricks should smoke his cigarette "because it would be the last one he would get." (9) After arriving at their destination, Hamby hit Hendricks over the head with a cue stick and slit his throat. Chandler jabbed Hendricks in the head with a knife, stomped him, and tied his hands with wire obtained from the automobile. (10) Leaving the scene of their crime, defendants decided to go to Tennessee. They aroused Jeannette so that she and Mildred might accompany them. (11) The two defendants shared the drive to Tennessee over treacherous mountain roads and returned without mishap to Lincoln County by afternoon. (12) The next day Chandler, well aware of what he had done, confessed the crime to a friend, and told him that a pillow marked the spot where the body was.

As pointed out by Higgins, J., in *State v. Miller, post,* p. 681, since the murder with which defendants were charged occurred on 8 April 1969 — after the repeal of G.S. 15-162.1 on 25 March 1969 — we are not confronted with the question relating to capital punishment which was debated in *State v. Spence and Williams,* 274 N.C. 536, 545 *et seq.,* 164 S.E. 2d 593, 600; *State v. Atkinson,* 275 N.C. 288, 315-321, 323-328, 167 S.E. 2d 241, 258-260, 262-265; *State v. Hill,* 276 N.C. 1, 16 *et seq.,* 170 S.E. 2d 885, 895; *State v. Ruth,* 276 N.C. 36, 44 *et seq.,* 170 S.E. 2d 897, 902; *State v. Roseboro,* 276 N.C. 185, 197, 171 S.E. 2d 886, 894.

In the trial below, we find

No error.