STATE OF NORTH CAROLINA v. BOBBY PAUL BURKE

No. 413A94

(Filed 3 November 1995)

## 1. Evidence and Witnesses § 117 (NCI4th)— evidence that third party was suspect—properly excluded

In a murder prosecution in which the major disputed issue was whether defendant was the second shooter involved in the killing, the trial court did not err by excluding testimony that a man named Prioleau was at one time a suspect in the police investigation and that his fingerprints had been submitted with other evidence to an SBI crime laboratory since this evidence neither pointed directly to the guilt of Prioleau as the second shooter nor tended to exonerate defendant.

**Am Jur 2d, Evidence § 587.**

## 2. Evidence and Witnesses § 1469 (NCI4th)— gun and ammunition found in dumpster—relevancy in murder case

A .44-caliber handgun, two boxes of .44-caliber ammunition, and three shells and a spent cartridge in the gun, which were found in a dumpster four days after a murder, were relevant because they tended to link defendant to the crime where two different shooters were involved in the killing; the evidence was contradictory as to who was carrying what kind of weapon the night of the shooting; defendant's fingerprints were found on one of the boxes of ammunition; the bullets found in the dumpster were consistent with the type of bullets recovered from the victim's body; and defendant admitted that he owned a .44-caliber handgun and that he had bought the ammunition for himself and another person. From the fact that a .44-caliber handgun was found in the dumpster with a box of .44-caliber bullets linked to

**STATE v. BURKE**

[342 N.C. 113 (1995)]

defendant through his fingerprints and his own testimony, the jury could infer that it was defendant who fired the .44-caliber handgun the night of the murder.

**Am Jur 2d, Evidence §§ 1434, 1443.**

**3. Evidence and Witnesses § 873 (NCI4th)— statement to witnesses—not inadmissible hearsay—exclusion not prejudicial**

In a murder prosecution wherein two teenage girls testified that defendant was one of the two shooters, testimony that, prior to the shooting, Corey Best had threatened to kick the girls if he found them again in the vicinity where the shooting occurred was not inadmissible hearsay because it was not offered to show that the declarant was going to hurt the girls but to explain why the girls had left the scene before the shooting and thus could not identify defendant as one of the shooters. Therefore, the trial court erred by excluding this testimony, but the error was not prejudicial where defendant was allowed to present this evidence through the testimony of other witnesses that the two girls were not at the scene during the shooting because of an argument with Corey Best.

**Am Jur 2d, Appellate Review §§ 705 et seq., 749, 750; Evidence §§ 341, 357.**

**4. Indigent Persons § 25 (NCI4th)— noncapital murder trial—refusal to appoint second counsel**

A defendant tried noncapitally for first-degree murder had neither a statutory nor a constitutional right to the appointment of a second counsel to represent him, and the trial court's refusal to appoint a second counsel did not show its bias toward the State or cause an unfair advantage for the State because there were two prosecutors where defendant's counsel had over ten years of experience, and the record does not suggest that the case was factually or legally complicated or that defense counsel was unprepared to conduct the trial alone.

**Am Jur 2d, Criminal Law §§ 796-977, 984, 985.**

**Comment Note.—Constitutionally protected right of indigent accused to appointment of counsel in state court prosecution. 93 ALR2d 747.**

**5. Jury § 111 (NCI4th)— pretrial publicity—denial of individual voir dire**

The trial court did not abuse its discretion in the denial of defense counsel's request for sequestration and individual *voir dire* in a murder case because of pretrial publicity in local newspaper articles linking defendant to a Jamaican drug ring and a televised report about the shooting and the ensuing search for defendant where defendant merely argued that individual *voir dire* is necessary in any case in which there has been pretrial publicity.

**Am Jur 2d, Jury §§ 198, 199, 289, 291, 294.**

**6. Criminal Law § 374 (NCI4th)— exclusion of evidence—court's comment—expression of opinion—absence of prejudice**

Assuming arguendo that the trial judge improperly expressed an opinion on the evidence in a murder trial when he commented in the presence of the jury, upon denying defense counsel's request to place a witness's excluded answer in the record, that the evidence was "completely irrelevant and immaterial," this one ruling and comment by the judge during the course of a five-day trial did not have a prejudicial effect on the result of the trial.

**Am Jur 2d, Trial § 283.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Duke, J., at the 6 December 1993 Criminal Session of Superior Court, Wayne County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 September 1995.

*Michael F. Easley, Attorney General, by Ronald M. Marquette, Special Deputy Attorney General, for the State.*

*Jean P. Hollowell and Teresa Freitas for defendant-appellant.*

FRYE, Justice.

Defendant, Bobby Paul Burke, was tried noncapitally, and a jury found him guilty of the first-degree murder of Patrick Joseph Leuten. The trial judge imposed the mandatory sentence of life imprisonment. Defendant was also convicted of one count of discharging a firearm into an occupied motor vehicle, but judgment was arrested on this

conviction. On this appeal, defendant makes six assignments of error. We conclude that defendant's trial was free from prejudicial error.

The State's evidence at trial tended to show the following facts and circumstances: In the early morning hours of 26 July 1991, Patrick Joseph Leuten and John Wright drove to a section of Maple Street in Goldsboro, North Carolina, where it was common for drugs to be sold in the street to people in their vehicles. Among the drug dealers on Maple Street were a man called "Jamaican Rick" and defendant, who was known as "Jamaican Bobby." Wright, a frequent purchaser of drugs, had been to the area earlier on the evening of 25 July 1991 with a person whose wallet had been taken either by Jamaican Rick, James Prioleau ("Big Deal"), or "Chevy."

Later during the early morning hours of 26 July 1991, Leuten drove Wright back to Maple Street in a borrowed truck to get the wallet. While they were stopped on Maple Street, the wallet was given to Wright by Big Deal. Wright observed defendant standing near the truck with a dull-colored automatic handgun. As Leuten drove away, Jamaican Rick yelled that he had been ripped off. At that point, Jamaican Rick and another black male began shooting at the truck driven by Leuten.

Leuten was struck by two bullets. Wright immediately pulled the truck to the side of the road, left the truck near the scene of the shooting with the key in the ignition, and ran home. The truck was found later that morning several miles from Maple Street near the trailer park where defendant resided. Leuten was found in the truck, dead from two gunshot wounds. A lead core that could have come from a .44-caliber gun was found in the decedent's abdomen. Also, parts of two nine-millimeter bullets were found under the floorboard and behind the seat of the truck.

Four days following the shooting, the Goldsboro Police Department received an anonymous tip that evidence could be found in a dumpster near the location of the shooting. On 30 July 1991, Goldsboro police searched the dumpster and found a shoe box containing a .44-caliber handgun and two boxes of .44-caliber ammunition. The gun, which holds six rounds, had three bullet casings in it. Defendant's fingerprints were on one of the boxes of ammunition. Defendant admitted that he owned a .44-caliber handgun and had bought the ammunition for himself and Jamaican Rick.

STATE v. BURKE

[342 N.C. 113 (1995)]

Since it was undisputed that Jamaican Rick was one of the shooters, the major disputed issue at trial was the identity of the second shooter. The State presented testimony that defendant was the second shooter. Although defendant did admit that he was present at the scene of the murder, he presented evidence, through his own testimony as well as the testimony of others, that suggested that someone else was the second shooter.

[1] For defendant's first assignment of error, he contends that the trial court erred in refusing to allow him to present evidence that would show that Big Deal was at one time considered a suspect in the case. First, defendant argues that it was error to refuse to admit defense exhibit #3. Defense exhibit #3 consisted of a set of Big Deal's fingerprints that was taken by the Goldsboro Police Department. This set of Big Deal's fingerprints, along with one set of decedent's fingerprints and two sets of defendant's fingerprints, was given to the State fingerprint expert for use in trying to find a match with any fingerprints lifted from evidence submitted to the SBI crime laboratory. The trial court did not allow the fingerprint expert to testify that defense exhibit #3 was a set of Big Deal's fingerprints taken by the police department and did not admit the exhibit into evidence.

Defendant further contends that the court erred in not permitting Ronald Melvin, a Goldsboro police officer, to testify that he had listed Big Deal as a suspect in the case at the time he submitted various items of evidence to the SBI crime laboratory. Defendant contends that the excluded evidence, defense exhibit #3 and Officer Melvin's testimony, corroborated defense testimony that Big Deal, not defendant, was the second shooter. Defense testimony showed that the .44-caliber gun pulled from the dumpster was the same one Big Deal carried the night of the murder. Defendant argues that since the only issue at trial was the identity of the second shooter, the evidence that Big Deal was a suspect points directly to Big Deal as the second shooter. As such, the evidence is highly probative in that it implicates Big Deal while exonerating defendant. We disagree with defendant's contentions and conclude that the trial court did not err by refusing to admit this evidence.

This Court has held that a defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inad-

missible. *State v. Jenkins*, 292 N.C. 179, 188-89, 232 S.E.2d 648, 654 (1977); *State v. Shinn*, 238 N.C. 535, 537, 78 S.E.2d 388, 389 (1953); *State v. Smith*, 211 N.C. 93, 96, 189 S.E. 175, 176 (1937). "[T]he admissibility of another person's guilt now seems to be governed, as it should be, by the general principle of relevancy under which the evidence will be admitted unless in the particular case it appears to have no substantial probative value." Henry Brandis, Jr., 1 *Stansbury's N.C. Evidence* § 93, at 302-03 (Brandis rev. 1973).

In the instant case, the trial court admitted evidence (1) that Big Deal was present at the scene of the crime, and (2) that Big Deal was carrying a .44-caliber handgun the night of the shooting. However, the evidence that Big Deal was a suspect is not probative of whether Big Deal committed the crime in that it does not show that Big Deal was the second shooter. Being a suspect in a police investigation does not necessarily implicate the suspect in that it is not evidence that the suspect is guilty of the crime. Accordingly, the evidence that Big Deal was at one time considered a suspect does not directly point to the guilt of Big Deal, nor does it exonerate defendant. As such, the trial judge did not err in refusing to admit the evidence.

[2] In his second assignment of error, defendant contends that the trial court erred in admitting State's exhibits #28, #29, #31, #32, #33, #34, and #35. Among the items introduced into evidence by the State were a shoe box (exhibits #29 & #31), a .44-caliber handgun (exhibit #28), two boxes of .44-caliber ammunition (exhibits #33 & #34), a spent cartridge from the gun (exhibit #35), and three bullets found in the gun (exhibit #32). All of the exhibits were found in a dumpster four days after the shooting and two days after defendant was interviewed by the Goldsboro police. Defendant contends that there was no connection between these items and the murder, and therefore, the exhibits should have been excluded. We disagree.

In order for evidence to be admissible, it must be relevant. N.C.G.S. § 8C-1, Rule 402 (1992). "The test of relevancy of evidence is whether it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (quoting N.C.G.S. § 8C-1, Rule 401 (1986)).

Contradictory evidence as to who was carrying what type of gun was presented at trial. One witness testified that Jamaican Rick had a .44-caliber handgun similar to the one found in the dumpster and that

**STATE v. BURKE**

[342 N.C. 113 (1995)]

he was carrying that gun on the night of the shooting. However, two other witnesses testified that Jamaican Rick was carrying a nine-millimeter handgun the night of the shooting. Two other witnesses testified that Big Deal was at the scene of the crime carrying a .44-caliber handgun similar to the one found in the dumpster. Another witness testified that defendant was carrying an automatic weapon the night of the murder, but defendant admitted to police that he owned a .44-caliber handgun.

The evidence in question is relevant because it tends to link defendant to the crime, thus allowing the jury to infer that defendant was the perpetrator of the crime. From the fact that a .44-caliber handgun was found in the dumpster along with a box of .44-caliber bullets linked to defendant through both his fingerprints and his own testimony, the jury could infer that it was defendant who fired the .44-caliber handgun the night of the murder. According to the State's evidence, the bullets found in the dumpster were consistent with the type of bullets recovered from the victim's body. Because the evidence was probative on the question of defendant's guilt and could be used to connect him to the crime, the trial judge did not err in admitting this evidence.

[3] Defendant contends in his third assignment of error that the trial court committed reversible error by refusing to allow him to inquire into statements made by Corey Best. Two witnesses, Korteshia Williams and Sonita Williams, stated that defendant was one of the shooters. At trial, defendant presented testimony that Korteshia and Sonita left the scene after Korteshia had an argument with Corey Best but before the shooting occurred. To corroborate this testimony, defense counsel questioned Calvetti Johnson. During the trial, the following exchange took place between defense counsel and Calvetti Johnson:

Q: What did you see?

A: Well, it wasn't nothing but a fuss. Mr. Burke and Corey Best was fussing and Corey Best went on Edgerton and got a gun and came back and he ran, ran Korteshia and Sonita off and told them if he caught them over there again what he would do.

Q: What did he say he would do?

A: Well he said he would—

MR. FERGUSON: Objection.

THE COURT: Sustained.

MRS. ALBERTSON: Your Honor, if I could be heard.

THE COURT: Sustained. I will hear you at the bench.

DISCUSSION AT THE BENCH.

THE COURT: Objection sustained.

MRS. ALBERTSON: Your Honor, I would like his answer for the record at the appropriate time.

When the witness was permitted to answer on *voir dire*, he stated:

He [Corey] said that, the best I can recall if he caught them back over there that he would kick, kick their little asses. He would do this and do that.

Defendant asserts that had this comment been received into evidence, the jurors could have inferred that such a threat would have motivated the teenage girls to leave, thereby corroborating testimony that they had already left the scene at the time of the shooting.

Defendant contends that the statement was admissible because it was not hearsay. It is well established that if an out-of-court statement is being offered for any purpose other than that of proving the truth of the matter asserted therein, it is not objectionable as hearsay. *State v. Griffis*, 25 N.C. 504 (1843). Statements which are offered for their own purposes, such as to explain nonverbal conduct, may be received into evidence for a nonhearsay purpose. *State v. Blake*, 317 N.C. 632, 638, 346 S.E.2d 399, 402 (1986). In the instant case, defendant was not offering the statement to show that the declarant was going to hurt the teenage girls but to explain why Korteshia and Sonita had left the scene before the shooting. Therefore, the trial court erred in excluding the testimony.

However, the error was not prejudicial. It is well settled that "no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence." *State v. Hageman*, 307 N.C. 1, 24, 296 S.E.2d 433, 446 (1982); *accord State v. Walden*, 311 N.C. 667, 673, 319 S.E.2d 577, 581 (1984). Several witnesses testified that Korteshia and Sonita were not at the scene during the shooting because of an argument between Korteshia and Corey Best. Calvetti Johnson testified that he witnessed Corey Best getting a gun and running Korteshia and Sonita off

the street. Defendant and another witness, Rico Lewis, also testified that they had seen Korteshia and Corey argue, after which time Korteshia and Sonita left the scene. Therefore, defendant was allowed to present this evidence through other testimony and was not prejudiced by this error.

[4] In his fourth assignment of error, defendant contends that the trial court committed reversible error by refusing to allow defense counsel's request for second counsel. One week prior to trial, defendant moved for the appointment of Shelby Duffy Albertson as additional counsel pursuant to N.C.G.S. § 7A-450. Defendant's appointed counsel, Jean P. Hollowell, had represented him for eight months, but defendant asserted that additional counsel would materially assist the preparation of the case because of the number of potential witnesses who had been listed by the State and the existence of other potential witnesses. In support of the motion, defendant argued that the case was complicated and would take over a week to try and that the State was advantaged by two assistant district attorneys being assigned to the case.

The trial court, citing Ms. Hollowell's ten years of experience, denied the motion. Thereafter, Ms. Albertson, Ms. Hollowell's law partner, gave a notice of representation and participated in the case without appointment. Defendant contends that the trial court's failure to appoint additional counsel showed its bias towards the State and caused an unfair advantage for the State. We disagree.

Indigent defendants in a capital case have a statutory right to the appointment of additional counsel. This right is not a constitutional right but is a statutory right. *State v. Locklear*, 322 N.C. 349, 357, 368 S.E.2d 377, 382 (1988). In the instant case, defendant was not tried capitally. Therefore, he had neither a statutory nor a constitutional right to the appointment of additional counsel. Whether to appoint additional counsel was within the discretion of the trial judge, and defendant has not shown that the trial judge abused his discretion by not appointing additional counsel. As the trial court noted, defendant's counsel had over ten years of experience. The record does not suggest that the case was factually or legally complicated or that defense counsel was unprepared or unable to conduct the trial alone. Accordingly, defendant's fourth assignment of error is without merit.

[5] For his fifth assignment of error, defendant contends that the trial court committed reversible error by refusing defense counsel's request for sequestration and individual *voir dire* of the jurors. One

week prior to trial, defendant moved for individual *voir dire* because of the pretrial publicity. The pretrial publicity consisted of local newspaper articles linking defendant to a Jamaican drug ring and a televised report about the shooting and the ensuing search for defendant. The court denied the motion. Defendant contends that he was unfairly prejudiced by the trial court's denial of his motion.

This Court has held that whether to allow sequestration and individual *voir dire* is a matter for the trial court's discretion. These rulings will not be disturbed unless there has been an abuse of discretion by the trial court. *State v. Barts*, 316 N.C. 666, 682, 343 S.E.2d 828, 837 (1986).

In the instant case, defendant has not argued or shown that the trial judge abused his discretion in not allowing individual *voir dire* or sequestration of the jury. He simply argues in his brief that individual *voir dire* is necessary in any case where there has been pretrial publicity. A defendant does not have a right to examine jurors individually merely because there has been pretrial publicity.

**[6]** Defendant contends in his sixth assignment of error that the trial court erred by exhibiting an "antidefendant" stance and by making "prejudicial judicial" comments during the trial. During the cross-examination of Ronald Melvin, the Goldsboro police officer who transmitted various items of evidence to the SBI crime laboratory for analysis, defense counsel attempted to solicit testimony that Big Deal was listed as a suspect on requests for examination of evidence. The trial court sustained the prosecution's objection to this testimony, and the following exchange took place:

MRS. ALBERTSON: Your Honor, I would like to have my question on the record and have him answer for the purpose of preserving the record.

THE COURT: Completely irrelevant and immaterial. The Court denies your request.

This exchange is the only example listed by the defendant as the basis for his sixth assignment of error. According to N.C.G.S. § 15A-1222, the trial judge may not express, during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury. This section codifies the traditional North Carolina position requiring strict neutrality on the part of the trial judge. N.C.G.S. § 15A-1222 official commentary (1988). Whether the accused was deprived of a fair trial by the challenged remarks must be determined

by what is said and its probable effect upon the jury in light of all attendant circumstances. *State v. Faircloth*, 297 N.C. 388, 392, 255 S.E.2d 366, 369 (1979). Assuming error *arguendo*, we do not believe that this one ruling and comment by the judge during the course of a five-day trial had a prejudicial effect on the result of the trial. Accordingly, we reject defendant's sixth assignment of error.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error.

NO ERROR.