STATE OF NORTH CAROLINA v. RICKY C. LYTCH

No. COA00-38

(Filed 3 April 2001)

## 1. Homicide—first-degree murder—short-form indictment—constitutionality

The short-form murder indictment did not violate defendant's due process rights.

## 2. Evidence—murder—cartridges and a knife—foundation

The trial court did not err by admitting into a first-degree murder prosecution an ammunition magazine, cartridges and a knife found in a trailer park where defendant lived and where the bodies were discovered. Although defendant contended that the State failed to prove precisely where the bullets were found or otherwise lay a proper foundation, the lack of evidence conclusively showing where the bullets were discovered goes to the weight rather than the admissibility of the evidence and the brief time lapse between the murders and the discovery of the bullets, the proximity to defendant's last known residence, and the fact

that one of the bullets was at one time in the murder weapon establishes relevancy. No gap existed in the chain of evidence which would preclude admission. A magazine containing the type of ammunition used to shoot the victims and a steak knife identical to the murder weapon were relevant.

**3. Evidence—prior assault—prior attempted robbery—admissible**

The trial court did not err in a first-degree murder prosecution by admitting evidence of an assault and attempted robbery that occurred two days before the murders where the closeness in both geography and time, the similar nature of the assault, and the connection between the bullets found at both scenes presented sufficient similarities for the evidence's admissibility.

**4. Homicide— first degree murder—instructions—prior attempted robbery—evidence of specific intent**

The trial court did not err in a first-degree murder prosecution by instructing the jury that it could consider a prior attempted robbery and shooting as evidence of specific intent. The jury could correctly consider the prior attempted robbery and shooting as evidence that defendant intended to rob the victims in this case. Moreover, even if the court misled the jury as to the relevance of the prior shootings to premeditation and deliberation, defendant was also convicted under the felony murder rule.

**5. Evidence—polygraph—not admissible**

The trial court did not err in a first-degree murder prosecution by not admitting evidence from a polygraph tending to show that defendant was not involved in the offenses charged.

**6. Witnesses—limited—substance of testimony admitted**

The trial court did not err in a first-degree murder prosecution by limiting the testimony of a defense witness regarding statements by fellow prisoners with whom defendant was incarcerated where the court admitted the substance of the proffered testimony.

**7. Evidence—testimony of inmate—collateral matter—bias toward prosecution**

The trial court did not err in a first-degree murder prosecution by allowing the State to present testimony establishing that an inmate's favorable testimony for defendant was rendered only

after the State spurned his assistance. Although defendant contended that this testimony related to a collateral matter, the testimony exposed the witness's bias against the prosecution.

Judge GREENE concurring.

Judge HUDSON dissenting.

Appeal by defendant from judgments entered 28 May 1999 by Judge B. Craig Ellis in Cumberland County Superior Court. Heard in the Court of Appeals 20 February 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charlesena Elliott Walker, for defendant appellant.*

McCULLOUGH, Judge.

On the morning of 8 October 1996, Will Campbell came home from work and found the bodies of two men, Ellis Chappelle Land, and Jameel Rashad Land, in the kitchen of his trailer located at the Berwick Trailer Park in Fayetteville, North Carolina. Mr. Campbell had been friends with the men, who were cousins, and who often visited Mr. Campbell at his residence. It was later determined that Chappelle Land (Chappelle) died from a gunshot wound to his upper chest, while Jameel Land (Jameel) died from a knife wound to his chest. The Cumberland County Sheriff's Department took defendant Ricky Lytch into custody several days later in connection with the matter.

Defendant was tried on two counts of first-degree murder during the 10 May 1999 Criminal Session of Cumberland County Superior Court. Evidence at trial tended to show that the Land cousins used drugs and sometimes sold them as well; defendant admitted purchasing marijuana from Chappelle on at least one occasion. Evidence also showed that two days before the double homicide, defendant was involved in a planned attempt to assault and rob known drug dealers. During the assault, which occurred at 414 Adams Street in Fayetteville, defendant and two other men fired their guns, injuring several people. An analysis of shell casings found at the Adams Street shooting revealed that two of the nine-millimeter bullets had been fired by the same gun that fired the bullets found beside the Land cousins' bodies.

Further, evidence showed that a nine-millimeter ammunition magazine and a knife identical to the one used to kill Jameel were discovered in a trailer where defendant had been staying. The manager of the Berwick Trailer Park also delivered to police three nine-millimeter bullets found within the trailer park. Like the cartridges found at the Adams Street shootings, one of these bullets had at one time been in the same gun that fired the bullets found at the murder scene.

On 26 May 1999, the jury found defendant guilty of two counts of first-degree murder on the basis of malice, premeditation and deliberation, as well as under the felony murder rule. Although defendant was tried capitally, the jury recommended, and defendant received, two sentences of life imprisonment without parole. Defendant appealed to this Court.

Plaintiff contends on appeal that the trial court erred by (I) denying defendant's motion for a mistrial where the short-form indictments failed to allege premeditation and deliberation; (II) denying defendant's motion to suppress three nine-millimeter bullets; (III) admitting into evidence a knife and a loaded magazine recovered from defendant's last known residence; (IV) admitting evidence of defendant's involvement in an assault and attempted robbery on Adams Street; (V) instructing the jury that it could consider the Adams Street shootings as evidence that defendant had the specific intent for the crimes charged; (VI) denying defendant's motion to introduce evidence from a polygraph test; (VII) barring hearsay evidence by a defense witness; and (VIII) denying defendant's motion *in limine* and overruling his objections to testimony by a witness. We will address defendant's arguments in turn.

[1] Defendant contends that the use of the short-form murder indictments authorized by N.C. Gen. Stat. § 15-144 (1999) did not give him sufficient notice and violated his rights to due process, notice, fundamental fairness, and trial by jury. Defendant argues that the short-form murder indictments failed to properly safeguard his rights because the indictments omitted elements of the first-degree murder offense, thereby depriving him of adequate notice. Defendant cites as authority for his position the recent decisions of the United States Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350 (1998), and *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999).

Defendant's argument is without merit. Our Supreme Court has consistently held that indictments for murder based on the short-

form indictment statute are in compliance with both the North Carolina and United States Constitutions. *State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996); *State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985). Moreover, our Supreme Court recently reconsidered the short-form indictment in light of the *Almendarez-Torres* and *Jones* decisions and reaffirmed its constitutionality. *State v. Wallace*, 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43 (2000) (examining *Jones* and *Almendarez-Torres* "in light of our overwhelming case law approving the use of short-form indictments" and finding a "lack of a federal mandate to change that determination"); *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 797 (2001) (noting that the short-form indictment is sufficient to charge first-degree murder on the basis of any of the theories referenced on the short-form indictment). Thus, the short-form indictment does not violate defendant's due process rights, and we overrule defendant's first assignment of error.

[2] Defendant next argues that three loose nine-millimeter cartridges turned over to investigators by the manager of the trailer park where defendant lived and where the bodies were discovered should have been excluded from evidence because, defendant contends, the State failed to prove precisely where the bullets were found or otherwise establish a proper foundation for their admittance at trial. As such, defendant argues that the cartridges were irrelevant and should have been excluded. We disagree.

Rule 401 of our evidence code defines as relevant all "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1999). Further, "all relevant evidence is [generally] admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (1999). In criminal cases, "every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Hamilton*, 264 N.C. 277, 286-87, 141 S.E.2d 506, 513 (1965), *cert. denied*, 384 U.S. 1020, 16 L. Ed 2d 1044 (1966).

The three nine-millimeter bullets at issue were provided to Lieutenant Donald Smith of the Cumberland County Sheriff's Department and Special Agent Errol Jarman of the North Carolina State Bureau of Investigation by Ms. Peggy Cox, manager of the Berwick Trailer Park, on 10 October 1996, only two days after the double homicide. She also delivered to the officers a shirt and a mag-

azine containing several nine-millimeter cartridges. While the officers declined to take the shirt, they did receive the other items, placing them into evidence envelopes on which they noted and initialed the date and location of receipt. Although Ms. Cox died before trial and was therefore unavailable to testify, the maintenance man who discovered the magazine and shirt testified that he found the items at a unit denoted as the 5318 Bellview unit, and that he immediately delivered these items to Ms. Cox. When placed under arrest, defendant admitted to staying in the Bellview unit the night before the murders occurred. Whether the shells were loose in the shirt or had been taken out of the magazine is not clear from the record; however, the officers' testimony establishes that the three loose shells were obtained at the Berwick Trailer Park. Finally, ballistics tests revealed that one of the three bullets had at one time been in the same weapon that fired the expended cartridges found alongside the victims' bodies and that fired two of the expended cartridges recovered at Adams Street.

In *State v. Felton*, 330 N.C. 619, 637-38, 412 S.E.2d 344, 356 (1992), the trial court properly admitted four bullets recovered from a discarded water heater near defendant's home. Although the bullets in question were the same type of bullets found in the victim's body, there was no evidence conclusively linking the bullets found in the water heater to the murder weapon. Nevertheless, the Court concluded that presence of

> four .25 caliber CCI bullets with rifling characteristics matching the lethal bullet is clearly relevant as circumstantial evidence linking defendant to evidence directly related to the crime. The lack of evidence that defendant actually fired the bullets into the water heater, the uncertain length of time the bullets had been in the water heater, the popularity of CCI bullets, and the fact that several types of .25 caliber guns could have produced the rifling characteristics at issue, impact the weight of the evidence, not its admissibility.

*Id.* at 638, 412 S.E.2d at 356. In the instant case, the lack of evidence conclusively showing where in the trailer park the bullets were discovered impacts the weight of the evidence, not its admissibility. The brief time lapse between the murders and discovery of the bullets, the proximity to defendant's last known residence and the fact that one of the bullets was at one time in the murder weapon establishes the evidence's relevancy. *See also State v. White*, 349 N.C. 535, 553, 508 S.E.2d 253, 265 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d

779 (1999) (holding that nine-millimeter shell casings that matched empty casings found beside the two murder victims and discovered in an area near a motel in Arizona where defendant was staying were relevant and admissible); *State v. Thompson*, 332 N.C. 204, 221-22, 420 S.E.2d 395, 404-05 (1992) (approving the admission of a pistol into evidence found several miles from the murder scene in a ditch after a storm two days after the murder). As for the chain of custody, no gap existed that precluded the bullets' admission. In *State v. Boyd*, 287 N.C. 131, 143, 214 S.E.2d 14, 20-21 (1975), chain of custody evidence similar to that proffered in the instant case was sufficient to allow the items into evidence in view of the notations made by law enforcement officers and other circumstances surrounding receipt of the items. Thus we conclude that an adequate foundation was laid to allow the admission of this evidence. We hold that the trial court correctly admitted evidence of the three nine-millimeter bullets, and we overrule defendant's assignment of error.

Defendant next contends that the trial court improperly admitted evidence of a loaded nine-millimeter magazine and a knife found at defendant's residence, arguing that there was insufficient evidence to connect him with the items. Again, we must disagree with defendant. Mr. Bobby Turner, a maintenance man at the trailer park, testified that he found the ammunition magazine in question lying on top of a shirt inside a trailer formerly rented to a Ms. Clara Rose. Ms. Rose testified that defendant was staying at her trailer at the time of the murders, a fact defendant also admitted. Further, law enforcement officials found a Brazilian steak knife with a black plastic handle and the word "Tramontina" inscribed on the blade on the kitchen counter in the same trailer. Ms. Rose identified the knife as similar to ones she used in her trailer. The knife blade found in Jameel's chest and a knife handle found at the murder scene fit together into the same type of knife, with identical markings, as the knife found in Ms. Rose's trailer. We determine that the magazine containing the same type of ammunition as the bullets used to shoot the victims and the steak knife identical to one of the murder weapons were relevant and properly admitted. This assignment of error is overruled.

[3] Defendant next argues that evidence of an assault and attempted robbery that took place two days before the murders was irrelevant and unduly prejudicial. Evidence at trial tended to show that on 6 October 1996, defendant was involved in a planned attempt to rob known drug dealers. The assault took place at 414 Adams Street in Fayetteville. Defendant and three other men demanded the victims'

drugs and money, and upon being refused, shot and wounded three people. Three expended nine-millimeter casings were found at and around the Adams Street house.

Analysis of the unfired bullets obtained from Ms. Cox, the expended cartridges found next to Jameel's and Chappelle's bodies, and the expended cartridges found at the Adams Street shootings showed that one of the bullets turned over by Ms. Cox had been in the same gun that fired two of the three cartridges retrieved from Adams Street and those recovered at the murder scene.

While evidence of defendant's prior misconduct may not be admitted to show that he has the propensity to commit an offense of the nature of the crime charged, *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990), such evidence may be admitted to show defendant's "motive, opportunity, intent, preparation, plan, knowledge, [or] identity." N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999). To be admissible, the misconduct must be sufficiently similar to that of the charged offense. *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *cert. allowed, judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

In *State v. Hoffman*, 349 N.C. 167, 184, 505 S.E.2d 80, 90 (1998), *cert. denied*, 526 U.S. 1053, 143 L. Ed. 2d 522 (1999), evidence of a prior bank robbery during which defendant merely sat in a car outside the bank was nevertheless admitted at defendant's trial for murder and a jewelry store robbery where he was the sole perpetrator. The Court noted that defendant used a sawed-off shotgun, ski mask and white Nissan in the bank robbery, while the jewelry store robber-murderer wore a ski mask and carried a sawed-off shotgun, with a white Nissan having been seen nearby. Both robberies occurred in small towns outside of Charlotte during business hours. The Court held that the two incidents were sufficiently similar to admit evidence of the earlier crime to show identity.

In the instant case, there were also sufficient similarities between the Adams Street shootings and the murders to admit the evidence. Like the Adams Street victims, Chappelle was a known drug dealer from whom defendant had purchased marijuana in the past. There was also evidence that Jameel sold drugs, and that he possessed cocaine the day before the murder. When Mr. Campbell arrived home and discovered the bodies, however, he could not find any drugs in the trailer. The closeness in both geography and time, the similar nature of the assault, and the connection between the bullets found

at both scenes present sufficient similarities for the evidence's admissibility. We hold that the evidence was relevant and did not unduly prejudice defendant. As such, the trial court correctly admitted this evidence at trial, and we overrule defendant's assignment of error.

[4] Defendant then argues that the trial court's charge to the jury impermissibly instructed them that they could consider the Adams Street shootings as evidence that defendant had the specific intent for the crimes charged. Defendant contends that, because there was no evidence that defendant intended or attempted to kill anyone during the Adams Street shootings, the incident would be inadmissible to show his intent to kill the Land cousins. Defendant concedes, however, solely for the purposes of this argument, that "the State's evidence was sufficient to prove his intent to assault and rob under the theory of acting in concert." Defendant was convicted for first-degree murder under both a theory of premeditation and deliberation and the felony murder rule. The trial court did not state that the Adams Street shootings related to premeditation and deliberation, but rather that the evidence was received for "the purposes of showing the *identity* of the person who committed the crime charged in this case . . . that the defendant had a *motive* for the commission of the crime charged in this case; [and] that the defendant had the *intent* . . . ." (Emphasis added.) Accordingly, the jury could correctly consider the Adams Street shootings as evidence that defendant intended to rob Chappelle and Jameel under the felony murder rule. Further, even if the trial court misled the jury as to the relevance of the Adams Street shootings to show premeditation and deliberation, defendant's convictions and judgments would not be affected. Since defendant was also convicted under the felony murder rule, it would not have mattered if the trial court had "failed to give any instructions concerning premeditation and deliberation." *State v. Farmer*, 333 N.C. 172, 194, 424 S.E.2d 120, 133 (1993). We subsequently overrule this assignment of error.

[5] Defendant also contends that the trial court erred by denying evidence from a polygraph test tending to show that defendant was not involved in the offenses charged. Defendant acknowledges, however, that "polygraph evidence is [not] admissible in any trial" in North Carolina, *State v. Grier*, 307 N.C. 628, 645, 300 S.E.2d 351, 361 (1983), and thus his claim that the trial court erred in not admitting such has no merit. "Defendant has presented us with no compelling reason to alter our long-standing holdings that evidence concerning polygraph

testing is inadmissible." *State v. Fleming*, 350 N.C. 109, 136, 512 S.E.2d 720, 739, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). We therefore overrule defendant's assignment of error.

[6] Next, defendant argues that the trial court committed prejudicial error in limiting the testimony of a defense witness regarding specific statements by fellow prisoners with whom defendant was incarcerated. Mr. Lucas Ismond, a former jail mate of defendant's, testified for the State that defendant admitted killing Chappelle and Jameel. Defendant sought to respond to this evidence by offering the testimony of Mr. Mitchell Quarterman, another fellow inmate. Although the trial court sustained as hearsay the State's objections to specific statements by Mr. Quarterman to Mr. Ismond, it allowed the substance of the information to come in by permitting the witness to testify that Mr. Ismond asked Mr. Quarterman to write things down for him about defendant's case. Further, Mr. Quarterman testified that inmates had discussed defendant's case in detail, and that they joked about defendant's case being a means of getting out of jail.

In *State v. Brown*, 327 N.C. 1, 17-18, 394 S.E.2d 434, 444 (1990), the Court upheld the cross-examination of a witness concerning prison rumors where no objection had been made on hearsay grounds. The Court noted, however, that "timely objection made on proper grounds may well have drawn a different ruling." *Id.* at 17, 394 S.E.2d at 444. Because the trial court in the instant case admitted the substance of the proffered testimony, there was no prejudice to defendant; even though certain specific statements were excluded, "no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence." *State v. Hageman*, 307 N.C. 1, 24, 296 S.E.2d 433, 446 (1982), *accord State v. Burke*, 342 N.C. 113, 120, 463 S.E.2d 212, 217 (1995). Given that the trial judge allowed the essential information proffered by defendant into evidence, we conclude that there was no prejudice in excluding the statements to which objections were sustained. We therefore overrule this assignment of error as well.

[7] Finally, defendant argues that the trial court erred when it allowed two of Mr. Quarterman's former attorneys to testify that Mr. Quarterman expressly authorized them to approach the prosecution about making a deal based on his testifying against defendant, an offer the State declined. Defendant contends that the attorneys' testimony related to a collateral matter that, having been denied by Mr.

Quarterman in his own testimony, could not be proven extrinsically, while the State argues that the testimony relates to defendant's bias since his offer was rejected.

It is well established in North Carolina that

> [a] witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony . . . . If the matters inquired about are collateral, but tend "to connect him directly with the cause or the parties" or show his bias toward either, the inquirer is not bound by the witness's answer and may prove the matter by other witnesses, but not before he has confronted the witness with his prior statement so that he may have an opportunity to admit, deny or explain it.

*State v. Green*, 296 N.C. 183, 192-93, 250 S.E.2d 197, 203 (1978); *see also State v. Westall*, 116 N.C. App. 534, 548, 449 S.E.2d 24, 32, *disc. review denied*, 338 N.C. 671, 453 S.E.2d 185 (1994) (approving the admission of testimony about collateral matters where the witness was closely connected to defendant).

In this case, Mr. Quarterman's bias toward the prosecution was exposed to the jury through his former lawyers' testimony, whose statements implied that Mr. Quarterman's favorable testimony for defendant was rendered only after the State spurned his assistance. Under the rule as set forth above, the testimony was properly admitted, and this assignment of error is also overruled.

We hold that defendant had a fair trial before a jury of his peers and that it was free from prejudicial error. In that trial we find

No error.

Judge GREENE concurs with separate opinion.

Judge HUDSON dissents.

GREENE, Judge, concurring.

Defendant argues the short-form murder indictment by which defendant was indicted in this case violates his due process rights under the United States Constitution. I acknowledge this Court is bound by our Supreme Court's decision in *State v. Wallace*, 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43, *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 498 (2000), holding the short-form murder indictment is

constitutional. I write separately to nevertheless state my continued belief that the short-form murder indictment does not comply with the requirements of due process and the right to notice under the Sixth Amendment of the United States Constitution. *See State v. Riley*, 137 N.C. App. 403, 416-17, 528 S.E.2d 590, 599 (Greene, J., dissenting), *disc. review denied and cert. denied*, 352 N.C. 596, —— S.E.2d —— (2000), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 681 (2001). Premeditation and deliberation are elements of first-degree murder in North Carolina. *State v. Hamby and State v. Chandler*, 276 N.C. 674, 678, 174 S.E.2d 385, 387 (1970), *death sentence vacated on other grounds*, 408 U.S. 937, 33 L. Ed. 2d 754 (1972). As the short-form murder indictment does not include the elements of premeditation and deliberation, N.C.G.S. § 15-144 (1999), the short-form murder indictment does not charge each element of the offense and, thus, is unconstitutional, *see Jones v. United States*, 526 U.S. 227, 232, 243 n.6, 143 L. Ed. 2d 311, 319, 326 n.6 (1999) (holding that when a "fact is an element of an offense rather than a sentencing consideration," it must be "charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt"); *Hamling v. United States*, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 620 (1974) (indictment must contain elements of offense charged).

Judge HUDSON, dissenting.

I believe the admission into evidence of three loose cartridges, one of which had been in the same gun used to shoot the victims, was error, in that the only evidence regarding the source of the cartridges is that they were found somewhere in Berwick Trailer Park. The maintenance man who discovered a magazine in the trailer where defendant had been staying reported seeing only a magazine, not the loose cartridges. The officers who received the cartridges from the trailer park manager did not testify as to where in the trailer park the cartridges had been found. Given the circumstances of this case and the use of the evidence by the prosecution, admission of the cartridges was unduly prejudicial to defendant.

This case is distinguishable from *State v. Felton*, 330 N.C. 619, 412 S.E.2d 344 (1992), *State v. White*, 349 N.C. 535, 508 S.E.2d 253 (1998), and *State v. Thompson*, 332 N.C. 204, 420 S.E.2d 395 (1992), cited by the majority in holding that the cartridges were properly admitted.

In *Felton*, four bullets having similar characteristics to the one used to kill the victim were discovered inside a water heater behind

defendant's trailer. 330 N.C. at 625, 412 S.E.2d at 348. Thus, the specific location in which the bullets were found was known and clearly linked to the defendant. By contrast, in the present case, we know only that the cartridges came from some place within an entire trailer park. There was evidence that the trailer park was a high-crime area and that it was not unusual to hear gunshots fired there. Furthermore, the trailer park was a "hang-out" for many people who were potential suspects in these murders.

In *White*, shell casings fired from the same gun used to kill the victims in North Carolina were found in Arizona at a site not far from the motel where defendant was staying. 349 N.C. at 544, 508 S.E.2d at 260. Clearly, if defendant had no involvement in the murders, it was exceedingly unlikely that the actual murderer would travel to Arizona and fire the murder weapon in close proximity to the motel where defendant was staying. Given the remote possibility of a coincidence, the shell casings found in Arizona linked the defendant to the murders. By contrast, in the present case, many potential suspects in the murders spent time in the trailer park where the bullets were found. Furthermore, while in *White* it was quite an unusual circumstance to find shell casings in Arizona from a gun used to kill people in North Carolina, it is not particularly surprising that the cartridges in this case were found in the same trailer park where the murders themselves took place.

In *Thompson*, a gun with the same characteristics as the murder weapon was found in a ditch approximately a mile and a half from the murder scene. 332 N.C. at 221, 420 S.E.2d at 404-05. There was no contention that the location where the gun was found helped identify *defendant* as the murderer; thus, *Thompson* is inapposite to the present case.

Most importantly, the prosecution in this case acted as if it were known that the cartridges had been found in the trailer where defendant was staying. The prosecutor told the jury: "And in the trailer where the defendant lived, by his own admission, [was found] a live round extracted from the same gun that fired the other five [bullets fired during the Adams Street robbery and the Land murders]. . . ." The prosecutor went on to argue that this evidence proved that defendant, as opposed to other robbers at Adams Street, fired the gun that killed the Land cousins. In other words, the prosecution claimed that the cartridges were found *in defendant's trailer*, when in fact there was no evidence that they were. This connection was presented

STATE v. LYTCH

[142 N.C. App. 576 (2001)]

to the jury as a crucial piece of evidence to identify defendant as the murderer.

Because the cartridges, known only to be found somewhere in Berwick Trailer Park, potentially implicated several people besides defendant, and because there was a high potential for the jury to be misled to believe that the cartridges had been found in defendant's trailer (as the prosecutor did ultimately argue), I believe it was reversible error not to exclude the cartridges under N.C.R. Evid. 401 and 403. There was little evidence in this case identifying defendant as the murderer. The cartridges were used as a key piece of evidence to convict the defendant, and there is a reasonable possibility that there would have been a different result if they had been excluded. See N.C. Gen. Stat. § 15A-1443(a)(1999)(setting forth standard for prejudicial error).

In addition, I believe the trial court erred in excluding on hearsay grounds testimony from Mitchell Quarterman regarding what information he had given Lucas Ismond. Quarterman's testimony clearly did not involve hearsay. The defense did not seek to introduce the substance of what Quarterman told Ismond (details about the murders and defendant's alleged involvement) in order to prove its truth; to the contrary, the defense would contend the details were in fact *not* true. See N.C.R. Evid. 801(c). The defense sought to introduce what details Quarterman told Ismond in order to show Ismond heard the details about which he testified from Quarterman and not from the defendant, as Ismond claimed. This is not a hearsay purpose.

I believe that exclusion of the testimony was unfairly prejudicial, in that the prosecution relied heavily on the testimony of Ismond to prove its case. If the evidence of the cartridges had been excluded from the trial, as I believe it should have been, Ismond's testimony becomes even more important. There was no direct evidence that defendant was the murderer other than Ismond's testimony that defendant had confessed to him. Defendant had a right to impeach Ismond's testimony to the extent that he legitimately could under the Rules of Evidence.

For the reasons cited above, I respectfully dissent and vote for a new trial.